******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# OFFICE OF CHIEF DISCIPLINARY COUNSEL
## *v.* ENRICO VACCARO
### (AC 45766)

Elgo, Prescott and Keller, Js.

*Syllabus*

The respondent attorney appealed to this court from the judgment of the trial court suspending him from the practice of law for a period of ninety days as a result of his inaction while representing a client that led to the dismissal, with prejudice, of the client's personal injury lawsuit. The petitioner, the Office of Chief Disciplinary Counsel, filed a presentment complaint against the respondent, alleging the misconduct at issue after a reviewing committee of the Statewide Grievance Committee conducted a hearing and concluded that the respondent had violated the Rules of Professional Conduct. The respondent filed a motion to dismiss the grievance complaint, in which he claimed that he was denied his right to due process and prejudiced as a result of numerous, extensive delays in the adjudication of the complaint. The reviewing committee denied that motion and then proceeded with the remainder of the hearing on the misconduct complaint. The reviewing committee found that there was no evidence that the respondent had suffered any prejudice and concluded that his violation of the Rules of Professional Conduct warranted a reprimand. The reviewing committee further determined that it was required to direct the petitioner to file the presentment pursuant to the applicable rule of practice (§ 2-47 (d) (1)) because the respondent had received three disciplinary reprimands in the five years prior to the filing of the grievance complaint at issue. The Statewide Grievance Committee upheld the reviewing committee's decision. The respondent did not appeal from either of those rulings. At the presentment hearing, the trial court stated that it was bound by the findings of the reviewing committee and that, pursuant to Practice Book § 2-47 (d) (1), the hearing was limited to determining the penalty to be imposed. The court stated that it considered the totality of the circumstances in fashioning its penalty and noted the respondent's lack of a sense of responsibility for the behavior underlying the presentment and his lack of any expression of contrition. *Held*:

1. The respondent could not prevail on his claim that the trial court erred when it failed to consider his assertion that his due process rights were violated and that he was prejudiced as result of the delay in the underlying disciplinary proceedings: the respondent had sufficient process available to him by way of an appeal from the reviewing committee's denial of his motion to dismiss, but because he failed to appeal from that determination, he was precluded from raising his due process claim before the trial court; moreover, the respondent's assertion that

he could not have appealed from the reviewing committee's ruling because the reviewing committee ordered presentment rather than imposing sanctions or conditions was unavailing, as the applicable rule of practice (§ 2-38) provides thirty days to file an appeal to the court, and Practice Book § 2-47 (d) (2) makes clear that a reviewing committee's denial of a motion to dismiss is a final decision subject to appellate review; furthermore, any appeal from the denial of the respondent's motion to dismiss had to be taken before the matter was presented to the trial court, as Practice Book § 2-47 (d) (1) precludes the court from considering facts or evidence that do not directly address what action the court should take regarding the respondent's misconduct, which was the sole issue to be determined in the presentment hearing.

2. This court could not conclude that the trial court abused its discretion by suspending the respondent from the practice of law for a period of ninety days:

a. The respondent's claim that the trial court improperly refused to consider the delay in the underlying disciplinary proceedings as a mitigating factor in determining his punishment was not tenable: contrary to the respondent's assertion that the court's interruptions of his testimony indicated that it mistakenly believed it was precluded from considering his due process rights and the delay in the underlying proceedings as a mitigating factor, the court's statement that it was limited to determining the respondent's penalty was an attempt to redirect his testimony, as the respondent was attempting to make the very due process attack that the court had warned it would not entertain; moreover, the respondent was given ample time to testify about the delay as a mitigating factor, and both parties' counsel discussed aggravating and mitigating factors, some of which the court referenced in its written decision; furthermore, the court was free to credit or reject the respondent's testimony, and the absence of discussion of the delay as a mitigating factor in the court's decision was of no consequence, as the court was not required to set forth its express consideration of specific evidence.

b. This court found unavailing the respondent's claim that the ninety day suspension imposed against him was excessive and out of proportion to the offense he committed: the respondent failed to demonstrate that the trial court acted arbitrarily by ordering the ninety day suspension, as it was required under Practice Book § 2-47 (d) (1) to consider the nature of the respondent's misconduct and the prior disciplinary measures imposed against him during the five year period prior to the filing of the grievance complaint at issue; moreover, the record showed that the court heard evidence regarding relevant aggravating and mitigating factors, asked both parties questions regarding those factors and provided ample time for their responses, and made specific reference to several of those factors in its decision; accordingly, this court could not conclude that the trial court abused its discretion in determining the appropriate discipline for the respondent.

Argued October 11, 2023—officially released June 11, 2024

*Procedural History*

Presentment by the petitioner for the alleged professional misconduct of the respondent, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Abrams, J.*; judgment suspending the respondent from the practice of law for ninety days, from which the respondent appealed to this court. *Affirmed.*

*Alexander T. Taubes*, for the appellant (respondent).

*Leanne M. Larson*, first assistant chief disciplinary counsel, for the appellee (petitioner).

*Opinion*

ELGO, J. In this presentment matter, the respondent attorney, Enrico Vaccaro, appeals from the judgment of the trial court disciplining him after the Statewide Grievance Committee (grievance committee) directed the petitioner, the Office of Chief Disciplinary Counsel (disciplinary counsel), to file a presentment pursuant to Practice Book § 2-47 (d) (1)[1] for the purpose of imposing

_____

[1] Practice Book § 2-47 (d) (1) provides in relevant part: "If a determination is made by the Statewide Grievance Committee or a reviewing committee that a respondent is guilty of misconduct and such misconduct does not otherwise warrant a presentment to the Superior Court, but the respondent has been disciplined pursuant to these rules by the Statewide Grievance Committee, a reviewing committee or the court at least three times pursuant to complaints filed within the five year period preceding the date of the filing of the grievance complaint that gave rise to such finding of misconduct in the instant case, the Statewide Grievance Committee or the reviewing committee shall direct the disciplinary counsel to file a presentment against the respondent in the Superior Court. . . . The sole issue to be determined by the court upon the presentment shall be the appropriate action to take as a result of the nature of the misconduct in the instant case and the cumulative discipline issued concerning the respondent within such five year period. Such action shall be in the form of a judgment dismissing the complaint or imposing discipline as follows: reprimand, suspension for a period of time, disbarment or such other discipline as the court deems appropriate. This may include conditions to be fulfilled by the respondent before he or she may apply for readmission or reinstatement. . . ."

appropriate discipline. On appeal, the respondent claims that the court (1) erred by failing to consider that the delay in the underlying disciplinary proceedings violated his due process rights and (2) abused its discretion by suspending him from the practice of law for a period of ninety days. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The respondent was admitted to the Connecticut bar on October 5, 1976. Prior to the commencement of the present action, the respondent received three disciplinary reprimands between August 14, 2015, and May 19, 2017. Two of the reprimands were issued by the grievance committee, and the third was a court-issued reprimand.[2]

On September 26, 2018, the grievance committee received a letter of referral from an attorney retained by a prior client of the respondent. Following a preliminary investigation, the grievance committee, on or about November 6, 2018, charged the Litchfield Judicial District Grievance Panel (first grievance panel or complainant) with "determining whether to conduct an investigation into this matter pursuant to Practice Book [§] 2-29 (e) (1), or to initiate a complaint pursuant to [Practice Book §] 2-32 (a), or both." On December 27, 2018, the first grievance panel filed a grievance complaint (complaint) against the respondent with the statewide bar counsel (bar counsel) in accordance with Practice Book § 2-32 (a).[3] The first grievance panel will hereafter be referred to as the complainant.

---

[2] In its August 29, 2022 memorandum of decision, the court found by clear and convincing evidence that the respondent had "an extensive recent disciplinary history [that included] [1] [a] reprimand issued by the Statewide Grievance Committee on August 14, 2015, accompanied by an order to take two continuing legal education classes; [2] a reprimand issued by the Statewide Grievance Committee on February 10, 2016; [3] a court-issued reprimand by Judge Bellis on May 19, 2017; and [4] [an] October 24, 2018 order by Judge Arnold that he take two continuing legal education classes."

[3] The process that governs the procedural history of this case, which ultimately resulted in a determination that probable cause existed that the respondent was guilty of misconduct, can be found in Practice Book § 2-

In accordance with the procedure prescribed in Practice Book § 2-32 (a), the bar counsel reviewed and processed the complaint, which alleged that, in the course of representing a prior client, the respondent's inaction resulted in the dismissal, with prejudice, of that client's motor vehicle-personal injury lawsuit. The complaint was then reviewed by a second grievance panel (second grievance panel) in the New Haven judicial district, which sent notice to the complainant and the respondent in accordance with § 2-32 to allow the parties an opportunity to respond to the inquiry. Upon completion of its review, the second grievance panel determined that "the record supported a finding of probable cause that the [r]espondent engaged in misconduct." The second grievance panel sent a copy of its record to the grievance committee and disciplinary counsel for further proceedings, and provided notice to the parties as required by § 2-32 (i) and (k).

32, which provides in relevant part: "(a) Any person, including disciplinary counsel, or a grievance panel on its own motion, may file a written complaint . . . alleging attorney misconduct . . . . Complaints against attorneys shall be filed with the statewide bar counsel. . . . [T]he statewide bar counsel shall review the complaint and . . .

"(1) forward the complaint to a grievance panel in the judicial district in which the respondent maintains his or her principal office or residence . . . .

"(f) The grievance panel, with the assistance of the grievance counsel assigned to it, shall investigate each complaint to determine whether probable cause exists that the attorney is guilty of misconduct. . . .

"(i) . . . (1) If the panel determines that probable cause exists that the respondent is guilty of misconduct, it shall file the following with the Statewide Grievance Committee and with the disciplinary counsel: (A) its written determination that probable cause exists that the respondent is guilty of misconduct, (B) a copy of the complaint and response, (C) a transcript of any testimony heard by the panel, (D) a copy of any investigatory file and copies of any documents, transcripts or other written materials which were available to the panel. These materials shall constitute the panel's record in the case. . . .

"(k) The panel shall notify the complainant, the respondent, and the Statewide Grievance Committee of its determination. The determination shall be a matter of public record if the panel determines that probable cause exists that the respondent is guilty of misconduct."

The grievance committee received the determination of probable cause and the related records on or about April 17, 2019. It thereafter referred the matter to a reviewing committee of the Statewide Grievance Committee (reviewing committee) on April 29, 2019, to hold a hearing and render a decision regarding the complaint, in accordance with Practice Book § 2-35 (a) and (c).[4]

What followed was a series of continuances, postponements, and other occurrences that ultimately delayed the hearing for eight months.[5] Although that hearing commenced on the morning of February 13, 2020, the parties were not able to complete the hearing because the respondent's counsel had an afternoon scheduling conflict with another matter. The reviewing committee granted a recess and subsequently sent notice to the parties that the hearing was to continue on April 23, 2020. By mid-March, 2020, however, the Judicial Branch had reduced its operations to hear only top priority matters as a result of the COVID-19 pandemic. On June 11, 2021, the requirement for a reviewing committee to be physically present at a contested hearing was eliminated, and the matter was scheduled for a virtual hearing on July 13, 2021. A lack of quorum due to an emergency with a reviewing committee member

---

[4] Practice Book § 2-35 provides in relevant part: "(a) Upon receipt of the record from a grievance panel, the Statewide Grievance Committee may assign the case to a reviewing committee . . . .

"(c) If the grievance panel determined that probable cause exists that the respondent is guilty of misconduct, the Statewide Grievance Committee or the reviewing committee shall hold a hearing on the complaint. . . ."

[5] The reviewing committee's January 21, 2022 decision detailed that the matter initially was scheduled for June 13, 2019. Thereafter, disciplinary counsel requested two separate continuances, and the respondent requested one. Each party consented to the other party's requests for continuances. Separately, additional postponements were necessary to permit the respondent to appear via videoconference and because of technical difficulties that arose with the videoconferencing equipment. A final continuance was needed prior to scheduling the February 13, 2020 hearing because an interpreter was not available.

caused the matter to again be rescheduled, this time to September 28, 2021.

Approximately two weeks prior to the commencement of the September 28, 2021 hearing, the respondent filed a motion to dismiss the grievance complaint, arguing, inter alia, that he has been "irreparably harmed and prejudiced by . . . the prior delays, and his due process rights to a fair and expeditious hearing have been violated." Disciplinary counsel filed an objection to the respondent's motion to dismiss, arguing, inter alia, that the respondent had failed to demonstrate any prejudice due to the delays.

During the hearing on September 28, 2021, the reviewing committee heard oral arguments regarding the motion to dismiss. Disciplinary counsel argued that the respondent had alleged prejudice as a result of the delay in the proceedings but had not offered any proof of actual prejudice. The reviewing committee denied the motion to dismiss, then proceeded with the remainder of the hearing on the misconduct complaint.

The reviewing committee issued its written decision on January 21, 2022, as required by Practice Book § 2-35 (i). It stated that the respondent's motion to dismiss was denied because "[t]here was no evidence . . . that the [r]espondent [had] suffered any prejudice from the delay" and because "dismissal of the complaint solely for delay is expressly prohibited by . . . Practice Book [§ 2-35 (m)]."[6] The reviewing committee further concluded, "by clear and convincing evidence, that the [r]espondent [had] violated the Rules of Professional Conduct" and that the violation "warrants a reprimand." Finally, the reviewing committee stated that "[w]e

---

[6] Practice Book § 2-35 (m) provides in relevant part: "The failure of a reviewing committee to complete its action on a complaint within the period of time provided in this section shall not be cause for dismissal of the complaint. . . ."

would have ordered the respondent reprimanded for his conduct in this matter, but we are mandated to present him to the court based on his prior disciplinary history. Pursuant to Practice Book § 2-47 (d), because the [grievance committee] and the court have disciplined the respondent more than three times in complaints filed in the five year period prior to the filing of this grievance complaint . . . we direct the disciplinary counsel to file a presentment against the respondent in the Superior Court for the imposition of whatever discipline is deemed appropriate.''

The respondent's counsel filed a request for review of that decision with the grievance committee, pursuant to Practice Book § 2-35 (k), arguing, inter alia, that ''the extraordinary delay of almost three years in the adjudication of this grievance complaint, with the obvious prejudices to the respondent . . . is fundamentally unfair, has deprived the respondent of his right to the timely hearing compelled by due process, and has resulted in irreparable prejudice and harm to him.'' The respondent further alleged that the delay: resulted in damage to his professional and business reputation, income, and emotional and physical well-being; caused an increase in the cost of litigating the matter over an extended period of time; and caused the parties' and witnesses' memories to be diminished, which was prejudicial to him. The grievance committee affirmed the decision of the reviewing committee on March 18, 2022, and the respondent did not appeal from that decision.

On March 21, 2022, in compliance with the reviewing committee's direction contained in its January 21, 2022 decision, disciplinary counsel filed this presentment, noting that it was required to do so pursuant to Practice Book § 2-47 (d) because of the respondent's prior disciplinary history. The respondent filed a ''motion to consider and adjudicate issues in appeal'' on May 23, 2022, admitting that he did not file an appeal but nonetheless

requesting that the court adjudicate issues he wanted to raise from the committees' decisions. The court denied the motion as untimely.

During the presentment hearing on May 25, 2022, the court stated that the "level of inquiry is limited to the penalty to be imposed" and that the court is "bound by the findings" of the reviewing committee. The court heard testimony concerning both aggravating and mitigating factors. Disciplinary counsel discussed various aggravating factors, including, inter alia, the details of the current violation, multiple disciplinary offenses within a short time frame, the respondent's lack of remorse, his refusal to acknowledge the wrongful nature of his conduct, and his substantial experience in the practice of law. The respondent's counsel discussed several potential mitigating factors, including, inter alia, the respondent's history of good standing within his profession, the lack of a dishonest motive for the current violation, the declining health of the respondent's parents, and the respondent's own declining health. The respondent personally testified as to the delay in the disciplinary proceedings, personal problems involving his parents' health, and that restitution was made to his former client in the personal injury case that led to the presentment. Disciplinary counsel ultimately advocated for a thirty day suspension, and the respondent's counsel argued for dismissal, or, if the court believed discipline was necessary, a requirement that the respondent perform pro bono legal work.

The court issued its memorandum of decision on August 29, 2022, noting that its role in the proceeding was circumscribed by Practice Book § 2-47 (d), which provides, inter alia, that "[t]he sole issue to be determined by the court upon the presentment shall be the appropriate action to take as a result of the nature of the misconduct in the instant case and the cumulative discipline issued concerning the respondent within

such five year period." The court stated that the "current presentment involves the respondent's failure to communicate with and adequately pursue the interests of his clients. . . . To the extremely limited extent he was willing to recognize these failures during his testimony before this court, he attributed them to issues in his personal life, specifically the stresses and responsibility brought on by the deteriorating health of his aging parents." The court stated that "the Practice Book gives this court the power and responsibility to consider . . . the totality of the circumstances in fashioning a penalty. Unfortunately, based on the circumstances, particularly the respondent's lack of any real sense of responsibility for the behavior at issue or the expression of any level of contrition, the court is not convinced that any level of disciplinary action will serve to guarantee that these issues will not arise again." The court entered an order suspending the respondent from the practice of law for ninety days and, pursuant to Practice Book § 2-64, appointed a trustee to protect the interests of the respondent's clients. From that judgment, the respondent now appeals.

I

The respondent first claims that the court erred in failing to consider his claim that his due process rights were violated by the delay in the underlying disciplinary proceedings. More specifically, the respondent argues that the court's belief that it could not consider his due process claims flowing from that delay and the resulting prejudice was an error of law that warrants dismissal of the case. In response, disciplinary counsel argues that the respondent's underlying claim that his due process rights were violated is unreviewable because the respondent failed to appeal from the reviewing committee's denial of his motion to dismiss based on the same argument, as required by Practice Book § 2-47 (d) (2). As such, disciplinary counsel contends that the court

properly refused to consider the respondent's due process claim in the presentment hearing. We agree with disciplinary counsel.

Whether a court correctly determines that reviewing a due process violation is outside its scope of authority is a question of law over which we exercise plenary review. See *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 239–40, 796 A.2d 1164 (2002).

The respondent first raised the due process claim in his September 15, 2021 motion to dismiss before the reviewing committee, asserting that "his due process rights to a fair and expeditious hearing have been violated," and that, as a result, he was "irreparably harmed and prejudiced by this and the prior delays . . . ." The reviewing committee denied the motion after finding that "[t]here was no evidence that . . . the respondent suffered any prejudice from the delay." The reviewing committee additionally concluded that the respondent had violated the Rules of Professional Conduct, the violation warranted a reprimand and, because it was his fourth violation in less than five years, directed disciplinary counsel to file a presentment against the respondent in accordance with Practice Book § 2-47 (d). The grievance committee affirmed the decision of the reviewing committee on March 18, 2022, over the respondent's objections that his due process rights were violated and that he suffered prejudice as a result of the delays in the proceedings. The respondent did not appeal from that decision.

In resolving this claim, we note that an appeal challenging the adjudication of issues arising from a disciplinary hearing must be reviewed in accordance with Practice Book § 2-38 (a) through (f), which provides thirty days for a respondent to file an appeal with the court. Moreover, Practice Book § 2-47 (d) (2) provides:

"If the respondent has appealed the issuance of a finding of misconduct made by the Statewide Grievance Committee or the reviewing committee, the court shall first adjudicate and decide that appeal in accordance with the procedures set forth in subsections (d) through (f) of Section 2-38. In the event the court denies the respondent's appeal of the finding of misconduct, the court shall then adjudicate the presentment brought under this section. *In no event* shall the court review the merits of the matters for which the prior reprimands were issued against the respondent." (Emphasis added.)

The respondent does not dispute that he failed to appeal from the denial of his motion to dismiss. Instead, he argues that he could not have taken an appeal at that juncture because Practice Book § 2-38 only allows for an appeal from a decision "imposing sanctions or conditions against the respondent, in accordance with [Practice Book §] 2-37 (a)," and the reviewing committee ordered presentment as opposed to imposing sanctions or conditions. We are unpersuaded.

First, in his motion filed on May 23, 2022, the respondent moved the court to "consider and adjudicate" issues he wanted to raise on appeal "pursuant to Practice Book § 2-47 (d) (2)," acknowledging that he had failed to timely appeal from the underlying disciplinary proceedings in accordance with subsections (d) through (f) of Practice Book § 2-38, as required by Practice Book § 2-47 (d) (2).[7] Second, subsections (d)

---

[7] Instead of filing an appeal, on May 23, 2022, the respondent filed a motion that he titled, "Motion to Consider and Adjudicate Issues in Appeal from Statewide Grievance Committee/Reviewing Committee." In this motion, the respondent moved that the court consider an unfiled, untimely appeal pursuant to Practice Book § 2-47 (d) (2) because "substantial rights of the [r]espondent have been prejudiced" by the decision of the grievance committee and subcommittees. The motion contained an accompanying affidavit from the respondent's counsel, stating, inter alia: "It was my intention and the intention of the [r]espondent . . . to appeal under Practice Book [§] 2-38 the aforementioned decision of the Statewide Grievance Committee/Reviewing Committee . . . . Due to a miscommunication within my office, the [a]ppeal

through (f) of § 2-38 provide in relevant part: "(d) The appeal shall be conducted by the court without a jury and shall be confined to the record. . . . (e) The respondent shall file a brief within thirty days after the filing of the record by the statewide bar counsel. . . . (f) Upon appeal, the court shall not substitute its judgment for that of the Statewide Grievance Committee or reviewing committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are: (1) in violation of constitutional provisions . . . ." The plain import of these provisions makes clear that the reviewing committee's denial of the respondent's motion to dismiss based on its conclusion that he had failed to demonstrate prejudice was a determination that was subject to appellate review as outlined therein. Put differently, the respondent attempts to assign error to the court when he simply failed to exercise fully the appellate rights available to him.

"[T]he law has established appropriate proceedings to which a judgment party may always resort when he deems himself wronged by the court's decision. . . . If he omits or neglects to test the soundness of the judgment by these or other direct methods available for that purpose, he is in no position to urge its defective or erroneous character when it is pleaded or produced in evidence against him in subsequent proceedings." (Internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 771, 143 A.3d 578 (2016). "Consequently, a party who fails to appeal from an agency decision may not use a different action as a substitute for that appeal to achieve a de novo determination of a matter upon which they failed to take a timely appeal." (Internal

. . . was not filed . . . within the thirty . . . day time limit specified in Practice Book [§] 2-38."

quotation marks omitted.) *Peck* v. *Statewide Grievance Committee*, 198 Conn. App. 233, 248, 232 A.3d 1279 (2020).

We reiterate that, when a presentment is ordered under Practice Book § 2-47 (d) (1), "[t]he *sole issue* to be determined by the court upon the presentment shall be the appropriate action to take as a result of the nature of the misconduct . . . ." (Emphasis added.) Practice Book § 2-47 (d) (1). Although the court is bound by the reviewing committee's and grievance committee's findings of fact from the underlying hearing, the court may consider aggravating and mitigating factors when determining what action to take as a result of the misconduct. Importantly, consideration of aggravating and mitigating factors to inform a decision regarding discipline is a completely different inquiry than considering arguments that attack the underlying findings of fact by the reviewing or grievance committees. The latter is not permitted under Practice Book § 2-47 (d) (1). Consequently, any appeal from a finding of misconduct or the denial of a motion to dismiss must be taken before the matter is presented to the Superior Court.

In the present matter, the reviewing committee considered the merits of the respondent's motion to dismiss, which raised a due process argument based on purported prejudice caused by the excessive delay in the underlying disciplinary proceedings. In denying his motion, the reviewing committee concluded that "[t]here was no evidence that . . . the [r]espondent [had] suffered any prejudice from the delay." The respondent made identical due process arguments to the grievance committee in his request for review of the reviewing committee's decision but did not thereafter file an appeal challenging either the reviewing committee's decision or the grievance committee's affirmance of that decision. As a result, the finding that there was not sufficient evidence to demonstrate that

the respondent had suffered prejudice from the delayed proceedings is a final decision from which he failed to take an appeal. It follows that the respondent "may not use a different action as a substitute for [an] appeal to achieve a de novo determination of a matter upon which [he] failed to take a timely appeal." (Internal quotation marks omitted.) *Peck* v. *Statewide Grievance Committee*, supra, 198 Conn. App. 248. The respondent's failure to test the soundness of the reviewing committee's findings regarding his due process argument via a direct appeal is fatal, as he may not attempt to litigate the same issue in subsequent proceedings. See *Sousa* v. *Sousa*, supra, 322 Conn. 771.

In the same memorandum of decision, the reviewing committee found, "by clear and convincing evidence, that the [r]espondent [had] violated the Rules of Professional Conduct" and directed disciplinary counsel to file a presentment against the respondent in accordance with Practice Book § 2-47 (d). The respondent has not contested the underlying findings made by the reviewing committee that he did, in fact, engage in misconduct. Specifically, he did not take an appeal pursuant to § 2-47 (d) (2).

In sum, the reviewing committee determined that the delay in the disciplinary proceedings did not cause prejudice to the respondent. Having failed to test that finding by appeal, the respondent may not continue to argue—as a factual matter—that the delay prejudiced him. Although the respondent argues that he was deprived of due process during the disciplinary proceedings, he had sufficient process available to him by way of an appeal. As a result, the court did not err by failing to consider whether the delay in the disciplinary proceedings caused prejudice, both because the respondent had failed to appeal from that determination made by the reviewing committee, and because, pursuant to Practice Book § 2-47 (d) (1), the court was precluded

from considering any facts or evidence that did not directly address what action the court should take regarding the misconduct.

## II

The respondent next claims that the court abused its discretion in suspending him from the practice of law for a period of ninety days. Specifically, the respondent argues that (1) the court expressly refused to consider the delay in the underlying disciplinary proceedings as a mitigating factor, and (2) under the circumstances, the ninety day suspension "was an excessive abuse of [the court's] discretion." We disagree with both arguments.

As an initial matter, we note that "[t]he trial court possesses inherent judicial power, derived from judicial responsibility for the administration of justice, to exercise sound discretion to determine what sanction to impose in light of the entire record before it. . . . It is well established that in sanctioning an attorney for violations of the Rules of Professional Conduct, courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice. . . . Whether this court would have imposed a different sanction is not relevant. Rather, we must determine whether the trial court abused its discretion in determining the nature of the sanction. . . . We may reverse the court's decision [in sanctioning an attorney] only if that decision was unreasonable, unconscionable or arbitrary, and was made without proper consideration of the facts and law pertaining to the matter submitted." (Citations omitted; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Egbarin*, 61 Conn. App. 445, 459–60, 767 A.2d 732, cert. denied, 255 Conn. 949, 769 A.2d 64 (2001).

A

The respondent first argues that the court committed legal error by operating under the mistaken belief that it was precluded from considering his due process rights and the effect of the delay in the underlying disciplinary proceedings as a mitigating factor when meting out the appropriate discipline. The respondent thus argues that the court's purported express refusal to consider the impact of the delay as a mitigating factor was an abuse of discretion based on an error of law.

Because the respondent alleges that the court's order imposing discipline was informed by an improper legal conclusion that it was precluded from considering a permissible mitigating factor, our review of that issue is plenary. "This court affords plenary review to conclusions of law reached by the trial court. . . . Under plenary review, we must decide whether the trial court's conclusions of law are legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Weinshel, Wynnick & Associates, LLC* v. *Bongiorno*, 192 Conn. App. 768, 777, 218 A.3d 626 (2019).

A court presiding over a presentment hearing under Practice Book § 2-47 (d) (1) is not permitted to consider arguments that would attack the facts previously determined by the reviewing committee because "[t]he *sole issue* to be determined . . . shall be the appropriate action to take as a result of the nature of the misconduct . . . ." (Emphasis added.) The court *is* permitted, however, to consider aggravating and mitigating factors when determining the appropriate action or discipline to impose on the attorney. "Courts considering sanctions against attorneys measure the defendant's conduct against the [Rules of Professional Conduct (rules)]. Although the rules define misconduct, they do not provide guidance for determining what sanctions are

appropriate. . . . Connecticut courts reviewing attorney misconduct, therefore, have consulted the American Bar Association's Standards for Imposing Lawyer Sanctions [ABA standards] . . . . Although the [ABA] standards have not been officially adopted in Connecticut, they are used frequently by the Superior Court in evaluating attorney misconduct and in determining discipline . . . . [A]fter a finding of misconduct, a court should consider: (1) the nature of the duty violated; (2) the attorney's mental state; (3) the potential or actual injury stemming from the attorney's misconduct; and (4) the existence of aggravating or mitigation factors." (Citation omitted; internal quotation marks omitted.) *Disciplinary Counsel* v. *Serafinowicz*, 160 Conn. App. 92, 99, 123 A.3d 1279, cert. denied, 319 Conn. 953, 125 A.3d 531 (2015).

The ABA Standards list aggravating factors as follows. "Aggravating factors include: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; [and] (k) illegal conduct, including that involving the use of controlled substances." A.B.A., Annotated Standards for Imposing Lawyer Sanctions (2019) standard 9.22, p. 451. The standards also list the following as mitigating factors: "(a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative

attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency . . . (j) *delay in disciplinary proceedings*; (k) imposition of other penalties or sanctions; (l) remorse; [and] (m) remoteness of prior offenses." (Emphasis added.) A.B.A., Annotated Standards for Imposing Lawyer Sanctions (2019) standard 9.32, p. 487.

Although the ABA Standards are frequently used as a guide for courts in determining appropriate discipline, "[t]he Standards, originally promulgated in 1986, have not formally been adopted by the judges of this state." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, 267 Conn. 1, 55 n.50, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004). Accordingly, although "a court *should* consider . . . the existence of aggravating or mitigating factors"; (emphasis added); id., 55; there is no express requirement that it do so. Further, even when a court is provided with relevant mitigating evidence, it is free to reject that evidence. See *Disciplinary Counsel* v. *Serafinowicz*, supra, 160 Conn. App. 101.

The record reveals that, during the presentment hearing, disciplinary counsel discussed the aggravating factors relevant to this case, which included the respondent's prior disciplinary offenses, his refusal to acknowledge the wrongfulness of his actions or to express remorse, and his substantial experience in the practice of law. The respondent's counsel discussed the mitigating factors relevant to this case, which included the absence of a disciplinary record prior to the more recent history of violations, the absence of a dishonest or selfish motive, the respondent's personal problems, and his physical impairment. The respondent testified about the delay in the disciplinary proceedings, family health issues involving his parents, and stated that restitution had been made to his former client in the personal

injury case at issue. In its memorandum of decision, the court specifically referenced some of these aggravating and mitigating factors, including that the respondent "became overwhelmed by family health issues" as a result of "the deteriorating health of his aging parents," and that he had "an extensive recent disciplinary history" but demonstrated a "lack of any real sense of responsibility . . . or the expression of any level of contrition . . . ."

The crux of the respondent's claim of legal error centers on an exchange he had with the court during the presentment hearing. Prior to the respondent's testimony, the court made the following statement:

"I think this inquiry is limited because of my ruling. It is limited to the penalty. I certainly want to hear from [the respondent], I want to hear how he feels about things, but I'm not going to entertain a due process attack. I have already ruled on that . . . ." The respondent began his testimony by stating that "one of the mitigating factors is the delay in the disciplinary proceeding. . . . [T]his delay . . . has resulted in severe prejudice to me. . . . [It] denies me . . . due process of law, and it warrants a dismissal."

Then, instead of testifying as to the effect of the delays, the respondent provided exhaustive testimony detailing the factual timeline of the disciplinary proceeding—which included details about the changes to the reviewing committee, the extensions or continuances that were granted, and alleging that the grievance committee was "not following [its] own rules" or adhering to timelines regarding hearings. The record shows that the respondent's monologue extended well over four pages of the transcript before the court ultimately stated, "[t]ime," after which the following colloquy occurred:

"The Court: I've made clear the parameters of the hearing. I'm not considering this in my decision. I have a question for you.

"The Respondent: Yes, sir.

"The Court: Did you mess up and how do you feel about it?

"The Respondent: Did I mess up?

"The Court: Yep.

"The Respondent: I would say, under the facts, no, I didn't mess up . . . ."

Thereafter, the respondent testified more directly about the effect of the delayed proceedings, stating that he had been required to participate in multiple hearings, file motions, and incur additional costs as a result of the delays. The record further reveals that the respondent provided what amounted to an additional six pages of transcribed testimony before ultimately concluding by stating, "that's all I could really say, Your Honor."

The respondent construes the court's statements—"I think this inquiry is limited because of my ruling," and, "I'm not considering this in my decision"—to be an express refusal to consider the delay as a mitigating factor when meting out discipline that was informed by an incorrect conclusion of law that it was precluded from doing so. After a close review of the record, however, it is clear that the court interrupted and redirected the respondent because he was attempting to make the very due process attack the court expressly had warned it would not entertain. Further, the record reflects that, after the court's interruption and redirection, the respondent provided what amounted to an additional six pages of testimony regarding mitigating factors before concluding of his own accord.

Given this context, the respondent's assertion that the court improperly refused to consider the delay as a mitigating factor, as distinct from an improper reassertion of his due process claim, is not tenable. Evidence in the record suggests that the court provided the respondent ample time to testify as to the delay being a mitigating factor, heard this testimony, and only interrupted after he provided an extensive recitation of the timeline of the underlying disciplinary proceedings. The court was free to credit or reject this testimony as well as to exercise its discretion in considering evidence that might be irrelevant or cumulative. See *Disciplinary Counsel* v. *Serafinowicz*, supra, 160 Conn. App. 101. Further, "there is no requirement that the court set forth its express consideration of [specific] evidence in its memorandum of decision"; id.; thus, the absence of discussion of the delay as a mitigating factor in the court's decision is of no consequence. On the basis of our plenary review of the record before us, we cannot conclude that the trial court committed legal error in its determination of the appropriate discipline. Accordingly, the respondent's first argument fails.

B

The respondent's second and final argument is that, under the circumstances of this case, the ninety day suspension constituted an abuse of discretion. Specifically, the respondent argues that a ninety day suspension was excessive given that disciplinary counsel asked for only thirty days and that the discipline imposed is out of proportion to the offense committed in light of other cases that involved more egregious conduct. We disagree.

When a court is tasked with imposing discipline pursuant to Practice Book § 2-47 (d) (1), it must determine "the appropriate action to take as a result of the nature of the misconduct in the instant case *and* the cumulative

discipline issued concerning the respondent within such five year period." (Emphasis added.) As a result, the appropriate action is not fashioned solely in response to the nature of the misconduct in the present case, as it is under § 2-47 (a) but, rather, includes consideration of prior disciplinary measures imposed over the five year lookback period. The court has discretion to view the totality of the circumstances when determining the appropriate discipline. Further, under the abuse of discretion standard of review, "[e]very reasonable presumption should be given in favor of the correctness of the court's ruling." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Spirer*, 247 Conn. 762, 781, 725 A.2d 948 (1999). "Absent a showing that the trial court has acted arbitrarily, we defer to the trial court's determination of the appropriate discipline." *Disciplinary Counsel* v. *Serafinowicz*, supra, 160 Conn. App. 102.

Here, as previously stated, the record reveals that the court heard evidence regarding relevant aggravating and mitigating factors. During the presentment hearing, the court asked both parties questions regarding those factors and provided ample time for their responses. In its memorandum of decision, the court made specific reference to several of the aggravating and mitigating factors, including the respondent's inability to meet his obligations due to becoming "overwhelmed by family health issues" relating to the "deteriorating health of his aging parents," the respondent's "extensive recent disciplinary history," his "refus[al] to communicate and/ or cooperate with . . . a former client, a prospective client, or the grievance authorities" and "the extremely limited extent he was willing to recognize these failures . . . ." Ultimately, the court determined that, "based on the circumstances, particularly the respondent's lack of any real sense of responsibility for the behavior at issue or the expression of any level of contrition, the

court is not convinced that any level of disciplinary action will serve to guarantee that these issues will not arise again."

The respondent has not met his burden of demonstrating that the court acted arbitrarily by ordering a ninety day suspension. On the basis of the record before us, we cannot conclude that the discipline imposed was a clear abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.