******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## OFFICE OF CHIEF DISCIPLINARY COUNSEL
## *v.* ENRICO VACCARO
## (AC 47336)

Cradle, C. J., and Alvord and Elgo, Js.

*Syllabus*

The petitioner, the Office of Chief Disciplinary Counsel, appealed from the trial court's judgment ordering certain funds to be disbursed to the respondent attorney from a clients' fund account he established pursuant to rule 1.15 of the Rules of Professional Conduct (IOLTA account) following an audit of that account by the Statewide Grievance Committee. The petitioner claimed, inter alia, that the court erred in determining that there was sufficient evidence in the record to support its conclusion that the funds at issue were fees earned by the respondent and should be returned to him. *Held*:

The trial court erred in ordering that the funds at issue in the respondent attorney's IOLTA account were fees earned by the respondent, as the record was devoid of any such evidence, and, therefore, the respondent failed to meet his burden of demonstrating that he was entitled to those funds, the court having relied on certain testimony that amounted to speculation, leaving this court with the definite and firm conviction that a mistake had been made.

The trial court erred when it rejected the petitioner's argument that the funds at issue should escheat to the state pursuant to the statute (§ 3-61a) governing abandoned property held by a fiduciary, as there was no evidence presented to prove that the funds belonged to the respondent attorney, and, thus, they were presumed to belong to the respondent's clients or third parties and necessarily were held in a fiduciary capacity pursuant to rule 1.15 of the Rules of Professional Conduct.

Argued September 3—officially released October 28, 2025

*Procedural History*

Presentment by the petitioner for the alleged professional misconduct of the respondent, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Abrams, J.*; judgment suspending the respondent from the practice of law for ninety days and ordering the appointment of a trustee; thereafter, the court, *Hon. Brian T. Fischer*, judge trial referee, ordered the disbursement of certain funds to the

respondent, and the petitioner appealed to this court. *Reversed*; *judgment directed*.

*Leanne M. Larson*, first assistant chief disciplinary counsel, for the appellant (petitioner).

*Alexander T. Taubes*, for the appellee (respondent).

*Opinion*

CRADLE, C. J. In this presentment action, the petitioner, the Office of Chief Disciplinary Counsel, appeals from the judgment of the trial court ordering certain funds to be disbursed to the respondent attorney, Enrico Vaccaro, from his interest on lawyers' trust account (IOLTA account) following an audit of that account by the Statewide Grievance Committee (grievance committee). On appeal, the petitioner claims that the court erred in (1) determining that there was sufficient evidence in the record to support its conclusion that the funds at issue were fees earned by the respondent and should be returned to him, and (2) concluding that it failed to prove that the funds at issue should escheat to the State of Connecticut, Office of the Treasurer's Unclaimed Property Division. We agree and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the claims on appeal. On December 27, 2018, a grievance complaint was filed against the respondent. On April 15, 2019, the Grievance Panel for the Judicial District of New Haven, geographical area number seven, and the towns of Branford, East Haven, Guilford, Madison and North Branford found probable cause that the respondent had violated rules 1.1, 1.3, and 1.4 (a) (2) through (4) of the Rules of Professional Conduct and referred the matter to the grievance committee and the petitioner for further proceedings. A reviewing committee of the grievance committee subsequently conducted a hearing on the matter.

On January 21, 2022, the reviewing committee issued a decision finding by clear and convincing evidence that the respondent had violated rules 1.3 and 1.4 (a) (2) through (4), and directing the petitioner to file a presentment against the respondent in the Superior Court.[1] A presentment hearing was scheduled during which the respondent was represented by counsel. Following the presentment hearing, the trial court, *Abrams, J.*, rendered a written decision on August 29, 2022, ordering, among other things, that the respondent be suspended from the practice of law for ninety days, effective immediately, and that a trustee be appointed to protect the interests of the respondent's clients. The court further ordered the respondent not to disburse or transfer any funds from "any clients' funds, IOLTA, or fiduciary accounts."[2]

Shortly thereafter, the respondent, in violation of the court's August 29, 2022 order, issued numerous checks from his IOLTA account payable to himself. As a result,

[1] The reviewing committee indicated, inter alia: "We would have ordered the respondent reprimanded for his conduct in this matter, but we are mandated to present him to the court based on his prior disciplinary history. Pursuant to Practice Book § 2-47 (d), because the Statewide Grievance Committee and the court have disciplined the respondent more than three times in complaints filed in the five year period prior to the filing of this grievance complaint (December 27, 2013–December 27, 2018), we direct the disciplinary counsel to file a presentment against the respondent in the Superior Court for the imposition of whatever discipline is deemed appropriate."

[2] On September 1, 2022, the respondent appealed, and this court affirmed the decision. See *Office of Chief Disciplinary Counsel* v. *Vaccaro*, 226 Conn. App. 75, 317 A.3d 785, cert. granted, 350 Conn. 907, 323 A.3d 1092 (2024). The respondent filed a petition for certification to appeal, which the Supreme Court granted as to the following question: "Did the Appellate Court correctly conclude that the respondent's failure to appeal from the decisions of the reviewing committee of the Statewide Grievance Committee and the Statewide Grievance Committee precluded him from raising, upon his presentment to the trial court, his claim that delays in the underlying grievance proceedings resulted in a denial of due process?" *Office of Chief Disciplinary Counsel* v. *Vaccaro*, 350 Conn. 907, 323 A.3d 1092 (2024).

on September 28, 2022, the court, *Abrams, J.,* ordered the grievance committee to conduct an audit of the respondent's IOLTA account for the period from January 1 through September 28, 2022, and ordered the respondent to fully cooperate with the audit. In response to the court's September 28, 2022 order, the respondent hired a certified bookkeeper, Alice Logan, to assist him in providing the grievance committee with the documents needed to complete the audit. Due to the state of the respondent's records, he was slow in providing the grievance committee with the documentation necessary to complete the audit, thereby necessitating numerous hearings regarding the audit. During one such hearing held on April 19, 2023, Logan was called as a witness by the respondent and testified before the court. Significantly, Logan testified that her accounting revealed a balance of $226,121.96 held in the respondent's IOLTA account that had been held in the account since before 2017 and could not be allocated to any client file or the respondent as fees earned or costs incurred.

On June 8, 2023, the court, *B. Fischer, J.,* ordered, among other things, that the balance of the funds totaling $226,121.96 held in the respondent's IOLTA account be placed in escrow and that the parties submit briefs addressing the proper distribution of the funds.[3] In its brief, the petitioner urged the court to order that the funds escheat to the state pursuant to General Statutes § 3-61a,[4] because the owner of the funds could not be

---

[3] The court found that the respondent violated rule 3.4 (3) of the Rules of Professional Conduct "in that he knowingly disobeyed a court order in disbursing checks when ordered not to on [August 29, 2022]." The court further found that the respondent violated rules 1.15 (b) and (j) of the Rules of Professional Conduct "in that he failed to maintain current and proper financial records and failed to hold funds of clients or third parties separate from his own funds." The court reprimanded the respondent for those violations.

[4] General Statutes § 3-61a provides: "All property and any income or increment thereon held in a fiduciary capacity for the benefit of another person is presumed abandoned unless the owner has, within seven years after

ascertained. The respondent argued that the funds should be returned to him because they were contingent fees earned and costs incurred by him over his nearly fifty years of practice.

On January 22, 2024, after the parties filed their briefs, the court issued a memorandum of decision wherein it ordered that the funds at issue be returned to the respondent. The court rejected the petitioner's argument that there is a presumption under rule 1.15 of the Rules of Professional Conduct that funds held in an IOLTA account belong to clients. The court noted that the clear and unambiguous language of the rule provides that funds held in an IOLTA account may be owned by clients, third persons, the attorney, or a combination thereof. The court reasoned that, if the drafters of the rule had intended to create a presumption that funds held in an IOLTA account belong to clients only, they could have done so explicitly, would not have included third persons as a category of individuals whose property may be held by an attorney in such an account and would not have included language permitting attorneys to deposit their own funds into the account to the extent necessary to avoid paying service charges.

The court further found that the petitioner did not satisfy its burden of establishing a prima facie case that the funds at issue are abandoned property that should escheat to the state's Unclaimed Property Division in accordance with § 3-61a. The court noted that, under the statute, a party must establish (1) the existence and amount of the unclaimed property that is being held in a fiduciary capacity for the benefit of another and (2) that the owner of such property has not taken certain

it became payable or distributable, increased or decreased the principal, accepted payment of principal or income, corresponded in writing with the fiduciary concerning the property or otherwise indicated an interest as evidenced by a memorandum on file with the fiduciary.''

actions within seven years of the property becoming payable or distributable. The court found that, although there was no dispute as to the existence of the funds and they had been held in the respondent's IOLTA account for more than seven years without any action being taken that would overcome the presumption of abandonment, the petitioner had not demonstrated that the funds in the IOLTA account had been held by the respondent in a fiduciary capacity for the benefit of another person. The court further found that, even if the petitioner had established a prima facie case, there was sufficient evidence for the respondent to rebut the presumption that the funds were abandoned in that there was credible testimony from a certified bookkeeper that the funds had been in the respondent's IOLTA account since 2017, the funds could not be allocated to any client file, and her accounting revealed no improper use of the funds. The court also noted that the respondent has been an attorney licensed to practice law in this state since 1976 and that no client of his had ever asserted that any amount due was not paid. This appeal followed.

I

The petitioner first claims that the court erred in determining that there was sufficient evidence in the record to support its conclusion that the funds at issue were fees earned by the respondent and should be returned to him. Specifically, the petitioner argues that it presented sufficient evidence to establish that the owner of the funds cannot be identified. The petitioner further argues that the respondent failed to provide any evidence that those funds were his earned fees. We agree.

We begin by noting that "[t]he clearly erroneous standard . . . is the preferable standard of review in attorney grievance appeals. . . . The clearly erroneous

standard of review provides that [a] court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Chief Disciplinary Counsel* v. *Zelotes*, 152 Conn. App. 380, 386, 98 A.3d 852, cert. denied, 314 Conn. 944, 102 A.3d 1116 (2014).

The following additional legal principles are relevant to this claim. Rule 1.15 (a) (5) of the Rules of Professional Conduct provides: " 'IOLTA account' " means an interest- or dividend-bearing account established by a lawyer or law firm for clients' funds at an eligible institution from which funds may be withdrawn upon request by the depositor without delay. An IOLTA account shall include only client or third person funds . . . ." The commentary to rule 1.15 notes that "[a] lawyer should hold property of others with the care required of a professional fiduciary." To that end, the rules pertaining to the maintenance of IOLTA accounts, wherein such property is kept, are comprehensive. For instance, rule 1.15 (b) of the Rules of Professional Conduct provides: "A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated or elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of seven years after termination of the representation." Rule 1.15 (c) of the Rules of Professional Conduct permits a lawyer to deposit the lawyer's own funds in an IOLTA account for the sole purpose of paying bank service charges on that account, but only in an amount neces-

sary for those purposes. Rule 1.15 (j) of the Rules of Professional Conduct requires that lawyers maintain client trust account records, including the physical or electronic equivalent of all checkbook registers, bank statements, records of deposit, and canceled checks for at least seven years after the termination of the representation of each client.[5] "Practice Book § 2-27

[5] Specifically, rule 1.15 (j) of the Rules of Professional Conduct provides: "A lawyer who practices in this jurisdiction shall maintain current financial records as provided in this Rule and shall retain the following records for a period of seven years after termination of the representation:

"(1) receipt and disbursement journals containing a record of deposits to and withdrawals from client trust accounts, specifically identifying the date, source, and description of each item deposited, as well as the date, payee and purpose of each disbursement;

"(2) ledger records for all client trust accounts showing, for each separate trust client or beneficiary, the source of all funds deposited, the names of all persons for whom the funds are or were held, the amount of such funds, the descriptions and amounts of charges or withdrawals, and the names of all persons or entities to whom such funds were disbursed;

"(3) copies of retainer and compensation agreements with clients as required by Rule 1.5 of the Rules of Professional Conduct;

"(4) copies of accountings to clients or third persons showing the disbursement of funds to them or on their behalf;

"(5) copies of bills for legal fees and expenses rendered to clients;

"(6) copies of records showing disbursements on behalf of clients;

"(7) the physical or electronic equivalents of all checkbook registers, bank statements, records of deposit, prenumbered canceled checks, and substitute checks provided by a financial institution;

"(8) records of all electronic transfers from client trust accounts, including the name of the person authorizing transfer, the date of transfer, the name of the recipient and confirmation from the financial institution of the trust account number from which money was withdrawn and the date and the time the transfer was completed;

"(9) copies of monthly trial balances and at least quarterly reconciliations of the client trust accounts maintained by the lawyer; and

"(10) copies of those portions of client files that are reasonably related to client trust account transactions."

Although rule 1.15 (j) (9) recommends quarterly reconciliation of IOLTA accounts, the commentary notes that monthly reconciliation is preferred. See Rules of Professional Conduct 1.15, commentary.

The commentary also explains: "In some situations, documentation in addition to that listed in subdivisions (1) through (9) of subsection [(j)] is necessary for a complete understanding of a trust account transaction. The type of document that a lawyer must retain under subdivision (10) of subsection [(j)] because it is 'reasonably related' to a client trust transaction will vary depending on the nature of the transaction and the significance

(c) complements [these] rule[s] by requiring that the records of a client trust account be available for audit by the Statewide Grievance Committee or disciplinary counsel '[u]pon the filing of a grievance complaint or a finding of probable cause . . . .' " *Disciplinary Counsel* v. *Evans*, 159 Conn. App. 343, 358, 123 A.3d 69 (2015).[6]

Neither party has cited any authority explicitly addressing which party bears the burden of proof in the audit of a client trust account. Although there is no appellate case law expressly addressing this burden of proof, we note with approval the decision of the trial court in *Office of Chief Disciplinary Counsel* v. *Elder*, Superior Court, judicial district of Hartford, Docket No. CV-17-6082453-S (December 3, 2019) (noting with respect to attorney's irregularities with IOLTA account

---

of the document in shedding light on the transaction. Examples of documents that typically must be retained under this subdivision include correspondence between the client and lawyer relating to a disagreement over fees or costs or the distribution of proceeds, settlement agreements contemplating payment of funds, settlement statements issued to the client, documentation relating to sharing litigation costs and attorney's fees for subrogated claims, agreements for division of fees between lawyers, guarantees of payment to third parties out of proceeds recovered on behalf of a client, and copies of bills, receipts or correspondence related to any payments to third parties on behalf of a client (whether made from the client's funds or from the lawyer's funds advanced for the benefit of the client)." Rules of Professional Conduct 1.15, commentary.

[6] Relatedly, Practice Book § 2-27 provides in relevant part: "(a) Consistent with the requirement of Rule 1.15 of the Rules of Professional Conduct, each attorney or law firm shall maintain, separate from the attorney's or the firm's personal funds, one or more accounts accurately reflecting the status of funds handled by the attorney or firm as fiduciary or attorney, and shall not use such funds for any unauthorized purpose.

"(b) Each attorney or law firm maintaining one or more trust accounts as defined in Rule 1.15 of the Rules of Professional Conduct and Section 2-28 (b) shall keep records of the maintenance and disposition of all funds of clients or of third persons held by the attorney or firm in a fiduciary capacity from the time of receipt to the time of final distribution. Each attorney or law firm shall retain the records required by Rule 1.15 of the Rules of Professional Conduct for a period of seven years after termination of the representation. . . ."

that "[a]n attorney handling client funds acts as a fiduciary; as a fiduciary, the attorney has an ongoing responsibility to make a full accounting and provide all information necessary for a full and definite understanding of the state of the funds he holds in trust").

Similarly, in *Office of Chief Disciplinary Counsel* v. *Sebadduka*, Superior Court, judicial district of Hartford, Docket No. CV-17-6084134-S (January 2, 2018), the court explained: "An attorney handling IOLTA funds acts as a fiduciary; as a fiduciary, the attorney has an ongoing responsibility to make a full accounting and provide all information necessary for a full and definite understanding of the state of the funds he holds in trust. The IOLTA random audit requirement is designed to encourage lawyers to continuously maintain accurate IOLTA records and routinely comply with all IOLTA trust account rules and regulations, in order to foster client confidence in the IOLTA system. That purpose is completely defeated if the lawyer is given a four month grace period to bring the account into compliance." Id. That purpose is likewise defeated if the funds are disbursed to the lawyer despite the absence of records demonstrating that he is entitled to those funds.

Moreover, common sense dictates that the party who exercises dominion and control over the account—the lawyer who is holding the account—is in the superior, and likely exclusive, position to demonstrate the origin of the funds in the account. Indeed, the trial court recognized this notion in ruling on the petitioner's motion for appellate stay. The court acknowledged that "placing the burden of proof on the petitioner in a case with factual circumstances such as those presented here may be specious. Decisive evidence that may assist the petitioner in carrying the burden of proof in a case such as the present would include an attorney's accounting records; however, when such records do not exist or are not adequately maintained by an attorney, then any

actual harm may be concealed, and as a result, would be impossible for the petitioner to prove. Placing the burden on the petitioner would, therefore, create a legally permissible avenue for a respondent to financially benefit from having engaged in misconduct in violation of the Rules of Professional Conduct.''

The foregoing is consistent with the testimony of the first assistant bar counsel to the grievance committee, Attorney Elizabeth Rowe, who conducted the audit on behalf of the grievance committee and testified at one of the hearings concerning the audit. Rowe explained: ''So when we look at an audit, the burden . . . in our opinion from my office, the burden is on the attorney to demonstrate any money that they take out of . . . the client's funds account has been substantiated as theirs. If they take the money without knowing whether or not it was substantiated, then that's considered misappropriation. They don't have the proper authorization to move that money. So, without substantiation, you cannot take money out of your IOLTA account. And if you do that without authorization, then that would meet the standard for misappropriation.'' Although the respondent has not been accused of misappropriation, he does seek to have the funds at issue returned to his control for disbursement primarily to himself. In order to do so, it necessarily stands to reason that he bears the burden to prove his entitlement to those funds. Indeed, as discussed previously, the grievance committee would have no basis upon which to ascertain the ownership of the funds in the absence of the records of the account that are maintained by the lawyer.

Here, the respondent failed to present any evidence proving that the funds at issue were fees that he had earned but had not yet paid to himself.[7] The respondent

---

[7] The respondent's brief to this court contains statements that reflect either a misunderstanding or misrepresentation of the record, the most notable of which being that ''Logan determined that of the $226,121.96 in funds, all but $5666.50 could be positively traced to specific clients or to

did not offer any documentary evidence in support of his claim, nor did he testify as to which cases generated his claimed fees. In ordering that the funds at issue be returned to the respondent, the trial court relied exclusively upon Logan's testimony. Logan testified that the funds had been in the respondent's IOLTA account since prior to 2017. She opined that those funds were fees that the respondent had earned but had not yet paid to himself. She testified that she did not have any evidence to support this opinion, but that her opinion was based on a "gut feeling." She testified that that "gut feeling" was based in part on her opinion that the respondent had a practice of paying his clients and their medical providers before paying himself. On cross-examination, however, Logan acknowledged that, although it may have been the respondent's practice to pay his clients and their medical providers before paying himself, there were various files where that did not occur. Logan acknowledged that there were funds remaining in the respondent's IOLTA account, dating back to as early as 2012, that should have been paid to his clients or their medical providers. Logan's "gut feeling" also was based on the fact that she was not aware of any complaints by any client or medical provider that they had not been paid. Logan acknowledged, however, that she did not contact the respondent's clients, their medical providers, or any other lienholders to confirm that they had been paid and they would not contact her if they had not been paid.

On the basis of the foregoing, we conclude that Logan's testimony that the $226,121.96 at issue belonged to the respondent as fees that he previously had earned was pure speculation and the trial court's reliance on

the respondent." As noted herein, Logan testified that she was not provided with any documentation from which she could ascertain to whom any of the $226,121.96 belonged.

that speculation leaves us with the definite and firm conviction that a mistake has been made in finding that those funds were fees earned by the respondent and ordering that they be returned to him. Mindful that "[d]isciplinary proceedings not only concern the rights of the lawyer and the client, but also the rights of the public and the rights of the judiciary to ensure that lawyers uphold their unique position as officers and commissioners of the court"; (internal quotation marks omitted) *Cohen* v. *Statewide Grievance Committee*, 339 Conn. 503, 516, 261 A.3d 722 (2021); we reject speculation as an evidentiary basis in a matter as serious as an attorney's maintenance of a client trust account. To countenance such a reliance would encourage and reward the failure to maintain proper records pertaining to those funds.[8] The record is devoid of any evidence that the funds at issue were fees earned by the respondent and, therefore, he has failed to meet his burden of demonstrating that he is entitled to those funds. Because it cannot reasonably be disputed that the funds at issue here do not constitute a de minimis amount intended to cover bank fees, they necessarily must

---

[8] Rowe explained: "[F]or us, on an IOLTA account, we do not want to see that there's too much money in the bank. Because one, we see the problem that we have here today, which is that we now have a six figure unknown funds and we don't know how to distribute them. But . . . the other reason for that is that the account is supposed to be a trust account holding client's funds only. And . . . if attorneys commingle their personal funds in the account, one, they're more likely to mistakenly or intentionally take too much money that they're not entitled to. But . . . the other reason is they ought to be reporting their income on a regular basis. And when you leave funds in an IOLTA account, you don't have a distribution to yourself that triggers a reporting requirement for tax purposes. And then also, creditors are not able to attach funds in [the] IOLTA account because . . . the Social Security number, the tax ID is not connected to the attorney personally. So, it's also a concern that the attorney may be hiding money from creditors . . . or other people of interest. But we want the money to be moved—so there's sort of a nefarious reason for it. But just in general, in order to have good accounting and good books, you need to take that money out and keep it separate."

belong to clients or third parties. We therefore conclude that the court erred in ordering that those funds were fees earned by the respondent.

## II

The petitioner also claims that the court erred when it rejected its argument that the funds at issue should escheat to the state. We agree.

As the trial court aptly noted, to establish a claim of escheat under § 3-61a, one must prove that the funds at issue are held in a fiduciary capacity for the benefit of another person and that person has not taken certain actions with respect to those funds within seven years of them becoming payable, thereby rendering them abandoned. The court explained: "[T]here is no dispute as to the existence of the unknown funds. Moreover, there is no dispute that the unknown funds have been held in the respondent's IOLTA [account] for over seven years, or that any of the actions prescribed under § 3-61a, which would overcome a presumption of abandonment have occurred in the last seven years. Instead, the dispute in the present case primarily centers on whether the unknown funds belong to the respondent or other persons, namely his clients. If the unknown funds belong to the respondent, then he could not have been holding those funds 'in a fiduciary capacity for the benefit of another person' as is required under § 3-61a." The court found that the petitioner failed to demonstrate that the funds at issue had been held by the respondent in a fiduciary capacity for the benefit of another person. Because we have concluded that there was no evidence presented to prove that those funds belonged to the respondent, they are presumed to belong to the respondent's clients or third parties and necessarily were held in a fiduciary capacity. We there-

fore agree with the petitioner that the court erred in finding to the contrary.[9]

The judgment is reversed and the case is remanded with direction to render judgment for the petitioner.

In this opinion the other judges concurred.

---

[9] The respondent contends that "the petitioner does not have the power to prosecute an action for escheat" and "[e]scheat to the state in the absence of the legal requirements would violate the constitution." Because the respondent has failed to adequately brief these arguments, we decline to address them. See *Sicignano* v. *Pearce*, 228 Conn. App. 664, 690–91, 325 A.3d 1127 (2024) ("[When] a claim . . . receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.)), cert. denied, 351 Conn. 908, 330 A.3d 881 (2025).