# OFFICE OF CHIEF DISCIPLINARY COUNSEL
## *v.* ENRICO VACCARO
### (SC 21047)

Mullins, C. J., and McDonald, D'Auria,
Ecker, Dannehy and Bright, Js.

*Syllabus*

Pursuant to the rules of practice (§ 2-47 (d) (1)), if a respondent attorney
has been disciplined at least three times in a five year period preceding the
date of the filing of a grievance complaint that gives rise to a finding of
current misconduct, the Statewide Grievance Committee or a reviewing
committee "shall direct the disciplinary counsel to file a presentment against
the respondent in the Superior Court," and "[t]he sole issue to be determined
by the court upon the presentment shall be the appropriate action to take"
as a result of the nature of the respondent's current misconduct "and the

---

[the] petitioner had every reason—including to clear his name and [to]
preserve evidence supporting his version of the events—to offer his account
immediately following the shooting"); *State* v. *Leecan*, supra, 198 Conn. 523
(trial court's admission of defendant's prearrest silence was not plain error
"because, if [an] objection had been raised, the state would have had an
opportunity to supplement the foundation . . . for the admission of such
evidence").

[8] Because we conclude that the trial court did not commit "an obvious
and readily discernable error"; (internal quotation marks omitted) *State* v.
*Kyle A.*, supra, 348 Conn. 446; we need not reach the second prong of the
plain error analysis. See, e.g., *State* v. *Blaine*, 334 Conn. 298, 313 n.5, 221
A.3d 798 (2019).

Office of Chief Disciplinary Counsel *v.* Vaccaro

cumulative discipline issued concerning the respondent within such five year period.''

Pursuant further to the rules of practice (§ 2-47 (d) (2)), "[i]f the respondent has appealed the issuance of a finding of misconduct made by the Statewide Grievance Committee or the reviewing committee, the court shall first adjudicate and decide that appeal in accordance with the procedures set forth in subsections (d) through (f) of [§] 2-38 [of the Practice Book].''

The respondent attorney appealed, on the granting of certification, from the judgment of the Appellate Court, which had affirmed the trial court's judgment suspending him from the practice of law for ninety days. A 2018 grievance complaint alleging certain professional misconduct by the respondent was referred to a reviewing committee of the Statewide Grievance Committee, but hearings on the matter were postponed for nearly three years. The respondent ultimately moved to dismiss the complaint, claiming that he had been denied his right to due process and prejudiced by the delay in its adjudication. Following a hearing in 2021, the reviewing committee denied the respondent's motion to dismiss and found that he had engaged in certain misconduct. The reviewing committee ultimately concluded that the respondent's misconduct warranted a reprimand but that it was required by Practice Book § 2-47 (d) (1) to direct the petitioner, the Office of Chief Disciplinary Counsel, to file a presentment in the Superior Court because the respondent had been disciplined at least three other times in the five years preceding the filing of the 2018 complaint. The respondent filed a request for review with the Statewide Grievance Committee, which upheld the reviewing committee's decision. The respondent, however, did not appeal from either the decision of the reviewing committee or the Statewide Grievance Committee. After the petitioner filed the presentment, the trial court declined the respondent's request to consider his due process claim and, pursuant to § 2-47 (d) (1), instead limited its inquiry to the appropriate discipline to impose. In affirming the trial court's judgment, the Appellate Court concluded that the respondent's failure to appeal from the decision of the Statewide Grievance Committee or the reviewing committee pursuant to the rule of practice (§ 2-38) governing appeals from grievance decisions "imposing sanctions or conditions" precluded him from raising his due process claim during the presentment proceedings before the trial court. The respondent claimed, inter alia, that the Appellate Court had incorrectly concluded that he waived his due process claim by virtue of his failure to pursue a timely appeal pursuant to § 2-38. *Held*:

This court agreed with the Appellate Court that, in cases in which the Statewide Grievance Committee or a reviewing committee designates a case for presentment pursuant to § 2-47 (d) (1), a respondent who seeks to challenge the committee's ultimate finding of misconduct or any subsidiary ruling made in connection with a misconduct finding must do so through an appeal to the Superior Court authorized by § 2-38, and § 2-47 (d) (2)

353 Conn. 793 DECEMBER, 2025 795

Office of Chief Disciplinary Counsel *v.* Vaccaro

requires the Superior Court to adjudicate that appeal before turning to the issue of what discipline, if any, is appropriate.

Moreover, once the appeal period under § 2-38 lapses without action, the committee's decision, including its interlocutory rulings, is final, and the Superior Court's authority at presentment is confined under § 2-47 (d) (1) to determining "the appropriate [disciplinary] action" to be taken as a result of the respondent's current misconduct and cumulative disciplinary history.

Nevertheless, the language and organization of §§ 2-38 and 2-47 (d) created a lack of clarity regarding the proper procedure for challenging findings of misconduct and for obtaining appellate review of constitutional claims in cases in which presentment to the Superior Court is directed pursuant to § 2-47 (d) (1), and that lack of clarity, coupled with concerns of fundamental fairness, required that this case be remanded to the trial court so that the respondent could litigate the merits of his due process claim as though he had filed a timely appeal pursuant to § 2-38 (a).

Specifically, this court could not rule out the possibility that the lack of clarity in the rules of practice may have led the respondent to believe that he did not need to appeal from the decision of the Statewide Grievance Committee or the reviewing committee, and the respondent's claim implicated his fundamental due process rights concerning a protected property interest.

There was no merit to the respondent's claim that the Appellate Court's interpretation of § 2-47 (d) (1) improperly curtailed the inherent authority of the Superior Court in disciplinary matters, as the rules of practice preserve that court's inherent authority in disciplinary matters while establishing the procedural sequence in which that authority must be exercised.

Argued September 18—officially released December 23, 2025

*Procedural History*

Presentment by the petitioner for the alleged professional misconduct of the respondent, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Abrams, J.*; judgment suspending the respondent from the practice of law for ninety days, from which the respondent appealed to the Appellate Court, *Elgo*, *Prescott* and *Keller, Js.*, which affirmed the trial court's judgment, and the respondent, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Alexander T. Taubes*, for the appellant (respondent).

796 DECEMBER, 2025 353 Conn. 793

Office of Chief Disciplinary Counsel *v.* Vaccaro

*Leanne M. Larson*, first assistant chief disciplinary counsel, for the appellee (petitioner).

*Opinion*

BRIGHT, J. The sole issue in this certified appeal is whether the failure of the respondent attorney, Enrico Vaccaro, to appeal from the decisions of the Statewide Grievance Committee and its reviewing committee[1] precluded him from raising, upon his presentment to the Superior Court, his claim that delays in the underlying grievance proceedings resulted in a denial of due process.

The respondent appeals from the judgment of the Appellate Court, which affirmed the judgment of the Superior Court suspending him from the practice of law for ninety days. See *Office of Chief Disciplinary Counsel* v. *Vaccaro*, 226 Conn. App. 75, 77–78, 98, 317 A.3d 785 (2024). The Appellate Court concluded that the respondent was precluded from raising his due process claim at his presentment hearing in the Superior Court because he did not appeal, pursuant to Practice Book § 2-38 (a),[2] from the decision of the Statewide Grievance

_____

[1] Although Practice Book §§ 2-38 (a) and 2-47 (d) (2) refer to an appeal from the decision of either the reviewing committee or the Statewide Grievance Committee, § 2-38 (a) provides that a party may appeal from a reviewing committee's decision only if the party first files a request for review with the Statewide Grievance Committee. As a practical matter, therefore, an appeal that challenges a reviewing committee's decision necessarily follows the Statewide Grievance Committee's action on that request for review. In this case, the respondent filed a request for review, and the Statewide Grievance Committee issued a brief ruling on March 18, 2022, finding no error and upholding the reviewing committee's decision. For ease of reference, like the Appellate Court, we refer to the appeal in this matter as one from the reviewing committee's decision, although the appeal properly lies after the Statewide Grievance Committee's affirmance of that decision. See, e.g., *Office of Chief Disciplinary Counsel* v. *Vaccaro*, 226 Conn. App. 75, 84–86, 317 A.3d 785 (2024).

[2] Practice Book § 2-38 (a) provides: "A respondent may appeal to the Superior Court a decision by the Statewide Grievance Committee or a reviewing committee imposing sanctions or conditions against the respondent, in accordance with Section 2-37 (a). A respondent may not appeal a decision by a reviewing committee imposing sanctions or conditions against

353 Conn. 793 DECEMBER, 2025 797

Office of Chief Disciplinary Counsel *v.* Vaccaro

Committee, which had reviewed and upheld the determination of its reviewing committee. See id., 88–89.

On appeal to this court, the respondent advances two principal arguments. First, he contends that the Appellate Court erred in concluding that he had waived his due process claim by failing to appeal from the reviewing committee's decision under Practice Book § 2-38. In his view, no such appeal was required under the rules of practice because the committee imposed no sanctions and the rejection of his motion to dismiss was not " 'a finding of misconduct . . . .' " Second, he argues that, even if an appeal were required by the rules of practice, the Superior Court retains inherent authority over the discipline of attorneys and, therefore, had the authority to consider his due process claim during the presentment proceeding and, if warranted, to "render a judgment dismissing the complaint" pursuant to Practice Book § 2-47 (a). Finally, he also argues that, even if his failure to appeal were considered a procedural default, his due process claim remains reviewable under *State* v. *Golding*, 213 Conn. 233, 239– 40, 567 A.2d 823 (1989),[3] as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

the respondent if the respondent has not timely requested a review of the decision by the Statewide Grievance Committee under Section 2-35 (k). Within thirty days from the issuance, pursuant to Section 2-36, of the decision of the Statewide Grievance Committee, the respondent shall: (1) file the appeal with the clerk of the Superior Court for the judicial district of Hartford and (2) mail a copy of the appeal by certified mail, return receipt requested or with electronic delivery confirmation, to the Office of the Statewide Bar Counsel as agent for the Statewide Grievance Committee and to the Office of the Chief Disciplinary Counsel."

[3] The doctrine articulated in *Golding* permits appellate review of certain constitutional claims that were not properly preserved in the trial court. See *State* v. *Golding*, supra, 213 Conn. 238–39. This is not such a claim. The respondent consistently raised his due process claim before the grievance bodies; it was adjudicated and expressly rejected on the merits. The Appellate Court concluded that his claim failed not because he did not preserve it, but because he failed to invoke the statutory right of appeal provided by Practice Book § 2-38. See *Office of Chief Disciplinary Counsel* v. *Vaccaro*, supra, 226 Conn. App. 88–89. *Golding* does not supply a mechanism to revive

Office of Chief Disciplinary Counsel *v.* Vaccaro

We agree with the Appellate Court that its interpretation of Practice Book §§ 2-38 and 2-47 represents the most textually and structurally sound reading of the existing rules. Nevertheless, the language and organization of those provisions create a lack of clarity regarding the proper procedure for challenging grievance committee findings of misconduct and for obtaining appellate review of constitutional claims in cases in which the committee directs presentment to the Superior Court pursuant to § 2-47 (d) (1). In light of that lack of clarity, and mindful of the fundamental fairness concerns implicated when claims involving vested property rights are foreclosed by procedural uncertainty, we reverse the judgment of the Appellate Court and direct it to reverse the trial court's judgment and to remand the case to the trial court to afford the respondent an opportunity to adjudicate the due process claim as if he had filed an appeal pursuant to § 2-38 (a).

The opinion of the Appellate Court sets forth in detail the factual and procedural history of this matter, which we summarize here to the extent relevant to the certified question. See *Office of Chief Disciplinary Counsel* v. *Vaccaro*, supra, 226 Conn. App. 78–84. The respondent was admitted to the Connecticut bar in 1976 and practiced primarily in the field of personal injury law. Between 2015 and 2017, the respondent received three formal disciplinary reprimands.[4] On December 27, 2018, following a preliminary investigation unrelated to the

claims forfeited by the failure to utilize an available appellate remedy. See, e.g., *Peck* v. *Statewide Grievance Committee*, 198 Conn. App. 233, 248, 232 A.3d 1279 (2020) ("a party . . . may not use a different action as a substitute for [an] appeal"). Accordingly, the respondent's reliance on *Golding* is misplaced.

[4] In its memorandum of decision, issued on August 29, 2022, the Superior Court observed that the respondent's disciplinary history from 2015 through 2018 included two separate reprimands by the Statewide Grievance Committee, a reprimand by the trial court, *Bellis, J.*, and an order by the trial court, *Arnold, J.*, directing the completion of continuing legal education courses.

Office of Chief Disciplinary Counsel *v.* Vaccaro

respondent's prior discipline, the Litchfield Judicial District Grievance Panel filed a grievance complaint against the respondent, alleging that his inaction resulted in the dismissal, with prejudice, of a client's personal injury case. A second grievance panel reviewed the matter and found probable cause that the respondent had engaged in misconduct. In April, 2019, upon receiving the probable cause determination, the Statewide Grievance Committee referred the matter to a reviewing committee for a hearing and decision pursuant to Practice Book § 2-35 (a) and (c).

The proceedings before the reviewing committee were protracted. Hearings initially scheduled for 2019 were repeatedly postponed—sometimes at the request of the petitioner, other times at the request of the respondent, and occasionally due to scheduling conflicts and technical difficulties. A hearing commenced on February 13, 2020, but could not be completed that day. The hearing was delayed further by the suspension of court operations due to the COVID-19 pandemic. The matter was rescheduled for July, 2021, but was again postponed when a quorum of the committee members was unavailable. The hearing ultimately proceeded on September 28, 2021, nearly three years after the grievance complaint had been filed.

In the interim, the respondent experienced significant family and personal difficulties, including the declining health and eventual deaths of both of his parents, as well as his own health issues. Approximately two weeks prior to the September 28 hearing, the respondent filed a motion to dismiss the grievance complaint on the grounds that the delays in the grievance process had "irreparably harmed and prejudiced" him and had infringed on his due process rights. At the September 28 hearing, the respondent contended that the cumulative delays, together with his personal hardships, had impaired his ability to defend against the charges. The

Office of Chief Disciplinary Counsel *v.* Vaccaro

reviewing committee denied the respondent's motion to dismiss and stated that it would address the motion in greater detail in a written decision following the hearing.

On January 21, 2022, the reviewing committee issued its written decision. The committee first addressed the arguments raised in the respondent's motion to dismiss and concluded that there was no evidence that the respondent had suffered any actual prejudice resulting from the delay. It then denied the motion, citing Practice Book § 2-35 (m), which precludes dismissal based solely on delay, and proceeded to make findings of misconduct. The committee found, by clear and convincing evidence, that the respondent had failed to act with diligence and to communicate adequately with his client, in violation of rules 1.3 and 1.4 (a) (2) through (4) of the Rules of Professional Conduct. The committee concluded that the misconduct warranted a reprimand, but, because the respondent had been disciplined at least three times within the preceding five years, it was required under Practice Book § 2-47 (d) (1) instead to order a presentment to the Superior Court for the determination of the appropriate sanction.[5] The respondent, pursuant to Practice Book § 2-35 (k),[6] filed a request

---

[5] The reviewing committee concluded that "the respondent's violation of rules 1.3 and 1.4 of the Rules of Professional Conduct warrants a reprimand." It went on to explain that it "would have ordered the respondent reprimanded for his conduct in this matter, but [it was] mandated to present him to the court based on his prior disciplinary history. Pursuant to Practice Book § 2-47 (d), because the Statewide Grievance Committee and the court have disciplined the respondent more than three times in complaints filed in the five year period prior to the filing of this grievance complaint . . . [the reviewing committee] direct[ed] the [petitioner] to file a presentment against the respondent in the Superior Court for the imposition of whatever discipline is deemed appropriate."

[6] Practice Book § 2-35 (k) provides in relevant part: "Within thirty days of the issuance to the parties of the final decision by the reviewing committee, the respondent may submit to the Statewide Grievance Committee a request for review of the decision. . . ."

Office of Chief Disciplinary Counsel *v.* Vaccaro

for review with the Statewide Grievance Committee, repeating his claim that the delay of nearly three years in adjudicating the grievance complaint had caused him prejudice, including reputational and financial harm, and had violated his right to due process. The Statewide Grievance Committee upheld the reviewing committee's decision, and the respondent did not appeal from that decision.

In accordance with the reviewing committee's directive, the petitioner filed a presentment in the Superior Court on March 21, 2022, pursuant to Practice Book § 2-47 (d) (1). The respondent thereafter filed a motion, asking the court to consider and adjudicate the issues he would have raised on appeal, though he acknowledged that no appeal had been filed.[7] The court denied the motion as untimely.

The Superior Court, *Abrams, J.*, thereafter, conducted a presentment hearing, limited to the issue of the appropriate discipline for the misconduct found by the reviewing committee. At the outset, the court, relying on Practice Book § 2-47 (d) (1), explained that it was bound by the factual findings of the reviewing committee and that its inquiry was confined to the penalty to be imposed. The court expressly declined to consider the respondent's due process claim, despite his attempts to raise it. During the hearing, both parties presented evidence concerning aggravating and mitigating factors. In particular, the respondent testified about

[7] Attorney Eugene A. Skowronski, counsel for the respondent, acknowledged in an affidavit filed with the Superior Court on May 23, 2022, that it was the respondent's intention to appeal, pursuant to Practice Book § 2-38 (a), from the decision of the reviewing committee as upheld by the Statewide Grievance Committee. Skowronski averred that he had prepared the appeal on March 31, 2022, and sent copies to Elizabeth M. Rowe, counsel for the Statewide Grievance Committee, and Leanne M. Larson, counsel for the petitioner, on April 8, 2022. He claimed that, due to a miscommunication in his office, however, the appeal was never filed with the Superior Court.

Office of Chief Disciplinary Counsel *v.* Vaccaro

the delays that were the basis for his motion to dismiss before the reviewing committee.[8]

After considering the evidence, the court suspended the respondent from the practice of law for ninety days. On appeal to the Appellate Court, the respondent argued, inter alia, that the court erred in not considering his due process claim. See *Office of Chief Disciplinary Counsel* v. *Vaccaro*, supra, 226 Conn. App. 78. The Appellate Court affirmed the judgment; id.; concluding that the respondent's failure to appeal from the reviewing committee's decision precluded him from reasserting his due process claim at the presentment hearing. See id., 88–89. This court subsequently granted certification to appeal, limited to whether the Appellate Court had correctly concluded that the respondent's failure to appeal from the reviewing committee's decisions precluded him from asserting in the presentment proceeding that the delay in the grievance process violated his constitutional right to due process. See *Office of Chief Disciplinary Counsel* v. *Vaccaro*, 350 Conn. 907, 323 A.3d 1092 (2024).

This certified appeal requires us to interpret the provisions of the Practice Book that govern attorney disciplinary proceedings and to determine whether the Appellate Court's construction of those provisions afforded the respondent an adequate opportunity to raise his due process claim. Both issues present questions of law over which our review is plenary. See, e.g., *Brown* v. *Commissioner of Correction*, 345 Conn. 1, 9, 282 A.3d 959 (2022) (interpretation of rules of practice is subject to plenary review); *State* v. *Fernandes*, 300

---

[8] The respondent also testified regarding the health of his parents and his restitution to the affected client. The petitioner's counsel emphasized the respondent's prior disciplinary record, lack of remorse, and experience in practice, whereas the respondent's counsel highlighted the respondent's good professional reputation, the absence of a dishonest motive, and his personal and family health issues.

Office of Chief Disciplinary Counsel *v.* Vaccaro

Conn. 104, 111, 12 A.3d 925 (whether available procedure comports with due process is question of law subject to plenary review), cert. denied, 563 U.S. 990, 131 S. Ct. 2469, 179 L. Ed. 2d 1213 (2011).

It is well established that an attorney's license to practice law constitutes a vested property interest protected by the due process clauses of the state and federal constitutions. See, e.g., *Statewide Grievance Committee* v. *Shluger*, 230 Conn. 668, 675, 646 A.2d 781 (1994); see also *In re Ruffalo*, 390 U.S. 544, 550–51, 88 S. Ct. 1222, 20 L. Ed. 2d 117, modified on other grounds, 392 U.S. 919, 88 S. Ct. 2257, 20 L. Ed. 2d 1380 (1968). Accordingly, an attorney subject to discipline is entitled to due process of law, which requires that the attorney be afforded "notice of the charges, a fair hearing and an appeal to court for a determination of whether he or she has been deprived of these rights in some substantial manner." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Botwick*, 226 Conn. 299, 308, 627 A.2d 901 (1993).

Although administrative in form, attorney disciplinary proceedings "are adversary proceedings of a quasi-criminal nature" and must be conducted in a manner that is fundamentally fair. (Internal quotation marks omitted.) Id., 306. We have recognized that disciplinary procedures must not be so strict as to "tie the hands of grievance committees and trial courts" or to make it "virtually impossible to discipline an attorney for any but the most obvious, egregious and public misconduct." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, 267 Conn. 1, 19–20, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004). At the same time, the process must also "ensure that attorneys subject to disciplinary action are afforded the full measure of procedural due process required under the constitution so that [they are] not unjustly

Office of Chief Disciplinary Counsel *v.* Vaccaro

deprive[d] . . . of their reputation and livelihood.'' (Internal quotation marks omitted.) Id., 20.

Although disciplinary proceedings are not subject to rigid mandatory time limits,[9] an excessive delay in their prosecution may, in certain circumstances, implicate an attorney's right to due process. See *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 243 n.6, 558 A.2d 986 (1989). However, a delay in grievance proceedings, standing alone and in the absence of prejudice, is insufficient to mandate dismissal of a disciplinary complaint. See id.; see also Practice Book § 2-35 (m).[10] In *Rozbicki*, this court held that, in the absence

[9] Compare Practice Book § 2-35 (i) (directing reviewing committee to issue its decision within ninety days after grievance panel files determination with Statewide Grievance Committee pursuant to Practice Book § 2-32 (i)), with Practice Book § 2-35 (m) (failure of reviewing committee to complete its action within prescribed time period "shall not be cause for dismissal of the complaint"). See also *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 240, 245, 558 A.2d 986 (1989) (concluding that, although statute imposed mandatory deadline for reviewing committee's action, committee's failure to comply with that deadline did not deprive it of authority or require dismissal of complaint).

[10] Practice Book § 2-35 governs the procedures that the Statewide Grievance Committee and its reviewing committees follow after a grievance panel has acted on a complaint. It authorizes the assignment of the case to a reviewing committee "of at least three members of the Statewide Grievance Committee, at least one third of whom are not attorneys"; Practice Book § 2-35 (a); grants subpoena power; Practice Book § 2-35 (b); and requires the committee, upon a probable cause finding, to "hold a hearing on the complaint"; Practice Book § 2-35 (c); which "shall be public and on the record"; Practice Book § 2-35 (g); and at which the respondent is "entitled to be present . . . and to have counsel present. . . ." Practice Book § 2-35 (h). The petitioner "may add additional allegations of misconduct arising from the record" before the hearing begins; Practice Book § 2-35 (d) (1); or "for good cause shown" and with the consent of the respondent and the committee after the hearing begins. Practice Book § 2-35 (d) (2). "Within ninety days of the date the grievance panel filed its determination with the Statewide Grievance Committee . . . the reviewing committee [must issue] a final written decision dismissing the complaint, imposing sanctions . . . or directing the [petitioner] to file a presentment"; Practice Book § 2-35 (i); and, although the rule sets time limits, it provides that "[t]he failure of a reviewing committee to complete its action . . . shall not be cause for dismissal of the complaint. . . ." Practice Book § 2-35 (m). A respondent

Office of Chief Disciplinary Counsel *v.* Vaccaro

of "a showing of prejudice as a result of the temporal violation, the [disciplinary] complaint should not be dismissed . . . ." *Doe* v. *Statewide Grievance Committee*, 240 Conn. 671, 679 n.9, 694 A.2d 1218 (1997).

Although in *Rozbicki* we reserved "for another day . . . the resolution of grievance procedure delays that are so prejudicial that they implicate the due process rights of an attorney charged with professional misconduct," we nevertheless recognized that prejudice is the critical consideration. *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 243 n.6; see id. ("[i]n related circumstances, constitutional and statutory rights to speedy trials have been vindicated by a consideration of a matrix of factors including, most importantly, prejudice"); see also *Doe* v. *Statewide Grievance Committee*, supra, 240 Conn. 691–92 (*Berdon, J.*, dissenting) (emphasizing potential for delay to prejudice respondent attorneys and to undermine fairness in disciplinary proceedings). Accordingly, a due process violation may arise when a delay causes actual prejudice to the respondent.

The certified issue concerns not whether the respondent ultimately will be able to demonstrate prejudice, but whether he forfeited the ability to litigate that constitutional question before the Superior Court by failing to appeal from the reviewing committee's decision. With these principles in mind, we turn to the respondent's contention that the Appellate Court improperly construed Practice Book §§ 2-38 and 2-47.

I

The respondent first claims that the Appellate Court erred in concluding that he forfeited his right to raise his due process claim at his presentment because he

___

may submit a request for review of the decision to the Statewide Grievance Committee within thirty days on specified grounds. Practice Book § 2-35 (k).

Office of Chief Disciplinary Counsel *v.* Vaccaro

had failed to appeal from the reviewing committee's denial of his motion to dismiss and the Statewide Grievance Committee's affirmance of that decision. According to the respondent, the Practice Book requires appeals only from the imposition of sanctions or conditions, neither of which were imposed by the reviewing committee or the Statewide Grievance Committee following the finding of misconduct in this case. Although we do not consider the respondent's construction of the relevant provisions of the Practice Book to be unreasonable, we are not persuaded that his construction advances the correct reading of those provisions.

The Appellate Court rejected the respondent's contention that he was not required to appeal from the reviewing committee's denial of his motion to dismiss because Practice Book § 2-38 authorizes appeals only from decisions " 'imposing sanctions or conditions . . . .' " *Office of Chief Disciplinary Counsel* v. *Vaccaro*, supra, 226 Conn. App. 86. It concluded that the "plain import" of subsections (d) through (f) of § 2-38 made the reviewing committee's final decision—including its determination that the respondent had failed to show prejudice from the delay[11]—subject to appellate

[11] In his brief and arguments to this court, the respondent reads the Appellate Court's decision as requiring an immediate appeal from the reviewing committee's denial of his motion to dismiss, even before the reviewing committee issued its ruling finding misconduct four months later. He argues that he could not have taken such an appeal because nothing in the Practice Book suggests that a respondent has a right to pursue such an interlocutory appeal. We disagree with the respondent's reading of the Appellate Court's decision. Nowhere does the Appellate Court state that the appeal had to be taken before there was a finding of misconduct. Rather, the Appellate Court noted that, after the Statewide Grievance Committee upheld the decision of the reviewing committee, including its denial of the respondent's motion to dismiss, the respondent "did not thereafter file an appeal challenging either the reviewing committee's decision or the [Statewide] [G]rievance [C]ommittee's affirmance of that decision. As a result, the finding that there was not sufficient evidence to demonstrate that the respondent had suffered prejudice from the delayed proceedings is a final decision from which he failed to take an appeal." *Office of Chief Disciplinary Counsel* v. *Vaccaro*, supra, 226 Conn. App. 88–89. Thus, the Appellate Court's conclusion was

Office of Chief Disciplinary Counsel *v.* Vaccaro

review; id., 87; and it held that the respondent's failure to appeal from the reviewing committee's final decision after it was upheld by the Statewide Grievance Committee barred him from raising his due process claim at the presentment hearing. See id., 88–89. The court emphasized that Practice Book § 2-47 (d) (2) requires any appeal from a misconduct finding to be adjudicated before presentment and that, once presentment is ordered, § 2-47 (d) (1) limits the proceeding to determining the appropriate action in light of the misconduct, preventing the trial court from revisiting the validity of the findings or the prejudice determination. See id., 85–86, 88–90. Because the respondent "had sufficient process available to him by way of an appeal" but "failed to appeal from that determination," the Superior Court was precluded from considering his due process claim on the merits. Id., 89–90. Thus, the Appellate Court's reasoning turned on the meaning and interplay of Practice Book §§ 2-38 and 2-47.

As he did before the Appellate Court, the respondent argues that Practice Book § 2-38 (a) authorizes appeals only from decisions "imposing sanctions or conditions" as enumerated in Practice Book § 2-37 (a) and, therefore, does not extend to a decision directing presentment, which is neither a sanction nor a condition. He further maintains that Practice Book § 2-47 (d) (2) applies only to appeals from "findings of misconduct," not interlocutory rulings such as the denial of a motion to dismiss, and that the Appellate Court effectively

that, once the Statewide Grievance Committee upheld the final decision of the reviewing committee—a decision that necessarily subsumes any prior interlocutory rulings, including the denial of a motion to dismiss—that final determination was subject to judicial review pursuant to Practice Book §§ 2-38 (a) and 2-47 (d) (2). Accordingly, the Appellate Court understood the respondent's failure not as a missed opportunity for interlocutory review, but as a failure to pursue an appeal from the committee's ultimate decision, through which he could have obtained review of the earlier interlocutory ruling as part of that appeal.

Office of Chief Disciplinary Counsel *v.* Vaccaro

added language to the rule by treating such determinations as appealable. In the respondent's view, the Appellate Court's reading of the rules creates tension between the "sole issue" language of § 2-47 (d) (1) and the authority granted to the Superior Court under § 2-47 (a) to "render a judgment dismissing the complaint" after the respondent has been heard in his own defense. This, he argues, "undermine[s] trial courts' inherent authority to determine their own jurisdiction and [to] dispose of cases and controversies before them . . . ." Finally, he argues that § 2-47 (d) (2), although providing for the procedures to be followed once an appeal is filed, does not, directly or by inference, provide when and how an appeal from a § 2-47 (d) (1) presentment is to be filed.

The petitioner maintains that the Appellate Court's interpretation of Practice Book §§ 2-38 and 2-47 was correct and consistent with this court's precedent. In its view, those provisions must be read together to establish a right of appeal from a reviewing committee's final decision—including any interlocutory rulings subsumed in the final decision—and § 2-47 (d) (2) requires that any such appeal be resolved before the trial court addresses the appropriate sanction at the presentment proceeding. The petitioner argues that, because " 'any appeal from a finding of misconduct or the denial of a motion to dismiss must be taken before the matter is presented to the Superior Court,' " the respondent may not use the presentment hearing to challenge determinations made by the reviewing committee when he failed to pursue the appellate process available to him. In the petitioner's view, the respondent was afforded notice, a hearing, and an opportunity to seek review under §§ 2-38 and 2-47. Because he failed to pursue the appellate review available to him, i.e., an appeal from the finding of misconduct made by the reviewing committee upon affirmance by the Statewide Grievance

Committee, he could not relitigate the findings of misconduct, or issues determined in connection therewith, at the presentment stage.

We thus turn to the interpretation of Practice Book §§ 2-38 and 2-47. "The interpretive construction of the rules of practice is to be governed by the same principles as those regulating statutory interpretation." *Commissioner of Social Services* v. *Smith*, 265 Conn. 723, 733–34, 830 A.2d 228 (2003); see *State* v. *Pare*, 253 Conn. 611, 622, 755 A.2d 180 (2000) ("[the] principles of statutory construction apply with equal force to Practice Book rules" (internal quotation marks omitted)); see also *Grievance Committee* v. *Trantolo*, 192 Conn. 15, 22, 470 A.2d 228 (1984); *State* v. *Cook*, 183 Conn. 520, 521–22, 441 A.2d 41 (1981). "In seeking to determine [the] meaning [of a statute or a rule of practice, we] . . . first . . . consider the text of the statute [or rule] itself and its relationship to other statutes [or rules]." (Internal quotation marks omitted.) *Disciplinary Counsel* v. *Elder*, 325 Conn. 378, 386, 159 A.3d 220 (2017).

We begin with the text of Practice Book § 2-38 (a), which provides in relevant part that "[a] respondent may appeal to the Superior Court a decision by the Statewide Grievance Committee or a reviewing committee imposing sanctions or conditions against the respondent, in accordance with Section 2-37 (a). . . ." The respondent relies on this language to argue that § 2-38 authorizes appeals only when a committee has itself imposed sanctions or conditions and, accordingly, that no appeal was available here because the reviewing committee directed presentment rather than imposing discipline. This argument might make sense were we to read § 2-38 (a) in isolation and were it the only provision at issue. The problem is that § 2-38 is not the only provision relevant to determining the procedure governing appeals in grievance matters. The reviewing committee expressly relied on Practice Book § 2-47 (d) as

Office of Chief Disciplinary Counsel *v.* Vaccaro

the basis for its order that a presentment be filed against the respondent, and we believe that it was correct to do so.

Practice Book § 2-47 (d) (1) provides in relevant part that, if a committee determines "that a respondent is guilty of misconduct and such misconduct does not otherwise warrant a presentment to the Superior Court, but the respondent has been disciplined . . . at least three times . . . within the five year period preceding . . . the grievance complaint that gave rise to such finding of misconduct in the instant case, the . . . committee shall direct the disciplinary counsel to file a presentment against the respondent in the Superior Court," and that "[t]he *sole issue* to be determined by the court upon the presentment shall be the appropriate action to take as a result of the nature of the misconduct in the instant case and the cumulative discipline issued concerning the respondent within such five year period. . . ." (Emphasis added.) The actions the court can take in such a case include dismissing the complaint, imposing discipline, up to and including disbarment, and imposing conditions on the respondent's readmission or reinstatement to the bar. See Practice Book § 2-47 (d) (1). Section 2-47 (d) (1) does not, however, address whether or how a respondent can challenge the committee's processes, procedures, or findings of misconduct that led to the presentment.

Subdivision (2) of Practice Book § 2-47 (d) seemingly does address that subject. It provides in relevant part that, "[*i*]*f the respondent has appealed the issuance of a finding of misconduct made by the Statewide Grievance Committee or the reviewing committee, the court shall first adjudicate and decide that appeal* in accordance with the procedures set forth in subsections (d) through (f) of Section 2-38. . . ."[12] (Emphasis added.)

---

[12] Practice Book § 2-47 (d) (2) also bars the court from reviewing the merits of the prior reprimands that led to the presentment.

Office of Chief Disciplinary Counsel *v.* Vaccaro

This provision does not, however, either expressly or by reference to another rule, for example Practice Book § 2-38 (a), provide for the filing of such an appeal or the procedure or timing for doing so.

Consequently, although Practice Book § 2-47 (d) (2) recognizes a respondent's right to appeal from a presentment brought pursuant to subsection (d) (1) beyond the appeals from decisions "imposing sanctions or conditions" allowed by Practice Book § 2-38 (a), and provides specific procedures for how such appeals should proceed by expressly referencing § 2-38 (d) through (f), it does not clearly and unambiguously provide for how such appeals are initiated. The structure thus invites competing reasonable interpretations: the respondent argues that, because § 2-47 (d) (2) makes explicit reference to subsections (d) through (f) of § 2-38, the lack of any reference to subsections (a) through (c) of that rule must be viewed as deliberate, confirming that appeals lie only from disciplinary sanctions as set forth in § 2-38 (a). On the other hand, the petitioner views the explicit reference in § 2-47 (d) (2) to an appeal from "the issuance of a finding of misconduct" and the rule's reference to § 2-38 (d) through (f) as incorporating the full appellate mechanism, including review of constitutional determinations, such as the respondent's due process claim. We conclude that the lack of explicit textual linkage between §§ 2-38 (a) and 2-47 (d) (2) creates an ambiguity in how and when attorneys must seek judicial review of misconduct findings and subsidiary rulings that lead to a § 2-47 (d) (1) presentment.

In light of this ambiguity in Practice Book § 2-47 (d), "we look . . . to the [rule's] history and [the] circumstances surrounding its enactment, to the . . . policy it was designed to implement, and to its relationship to existing [provisions] and [common-law] principles governing the same general subject matter." (Internal quotation marks omitted.) *Nizzardo* v. *State Traffic*

812 DECEMBER, 2025 353 Conn. 793

Office of Chief Disciplinary Counsel *v.* Vaccaro

*Commission*, 259 Conn. 131, 141, 788 A.2d 1158 (2002). We also presume that the drafters of the Practice Book did "not intend to enact meaningless provisions," and we avoid interpretations that render any provision superfluous or produce absurd or unworkable results. (Internal quotation marks omitted.) *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010); see id., 430; see also *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 242–43. Applying these well settled principles, we look to the purpose and structure of the attorney disciplinary rules, which help us resolve the ambiguity in the present case.[13]

The attorney disciplinary scheme serves two interrelated purposes: "to protect the public and the court from unfit practitioners," and to ensure that attorneys are afforded fair process and meaningful judicial review. *Massameno* v. *Statewide Grievance Committee*, 234 Conn. 539, 554, 663 A.2d 317 (1995); see id., 553–55; see also *Statewide Grievance Committee* v. *Botwick*, supra, 226 Conn. 307–308. Reading Practice Book §§ 2-38 and 2-47 together in light of those purposes provides guidance as to how the rules were intended to operate.

The structure of the rules also guides our analysis. Specifically, the rules delineate three procedural mech-

---

[13] Although there is limited drafting history for Practice Book § 2-47 (d), the commentary accompanying the rule when subsection (d) was first added in July, 2003, provides relevant context. The commentary provides: "The court may consider the nature of the rule violations giving rise to the attorney's prior discipline, the attorney's service to the community, the length of the time the attorney has practiced, the amount of time between events resulting in the imposition of discipline, and the attorney's own efforts to improve the quality of his lawyering. Not every instance of repeated discipline will require further discipline, however, such repeated occurrences warrant further scrutiny regarding the attorney's continued fitness to practice law without harm to the public." Practice Book (2003) § 2-47, commentary. Although this commentary provides some insight into the purpose of this particular presentment procedure, it does not address the absence of any reference to Practice Book § 2-38 (a) in § 2-47 (d).

Office of Chief Disciplinary Counsel *v.* Vaccaro

anisms by which attorney disciplinary matters may proceed following a finding of misconduct by the Statewide Grievance Committee or one of its reviewing committees. First, pursuant to Practice Book §§ 2-35 through 2-38, when a reviewing committee finds misconduct, it may itself impose discipline, such as a reprimand or an order of restitution, in which case the respondent may appeal to the Superior Court pursuant to Practice Book § 2-38. See Practice Book §§ 2-35 (i), 2-36, 2-37 (a) and (c), and 2-38. Second, the reviewing committee may determine that the misconduct warrants a presentment to the Superior Court and direct disciplinary counsel to file a presentment. See Practice Book §§ 2-35 (i) and 2-47 (a). In that circumstance, the proceeding is de novo: the trial court determines for itself whether the respondent violated the Rules of Professional Conduct and what sanction, if any, is appropriate. See *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 167, 575 A.2d 210 (1990). Because the matter is heard de novo before the Superior Court, no appeal lies from the committee's decision to order a presentment.

Third, Practice Book § 2-47 (d) (1) creates a narrower presentment procedure that operates differently from a de novo presentment. That procedure applies only when a reviewing committee finds misconduct and concludes that the misconduct, standing alone, would not justify a presentment, but the attorney has been disciplined three or more times within the preceding five years. In that circumstance, the committee must direct the petitioner to file a presentment so that the court may consider "the appropriate action to take" in light of the attorney's disciplinary record. Practice Book § 2-47 (d) (1). "The sole issue to be determined by the court upon the presentment [is] the appropriate action to take as a result of the nature of the misconduct in the instant case" and the respondent's prior disciplinary history. Practice Book § 2-47 (d) (1).

Office of Chief Disciplinary Counsel *v.* Vaccaro

The policy underlying Practice Book § 2-47 (d) reflects the intent of the judges of the Superior Court that, even when an attorney's most recent misconduct might not independently warrant discipline, the attorney's cumulative record may justify the imposition of more severe disciplinary measures. The commentary accompanying § 2-47 at the time subsection (d) was adopted; see footnote 13 of this opinion; supports this understanding, noting that, although "[n]ot every instance of repeated discipline will require further discipline . . . *such repeated occurrences warrant further scrutiny* regarding the attorney's continued fitness to practice law without harm to the public." (Emphasis added.) Practice Book (2003) § 2-47, commentary. The rule ensures that the court is apprised of an attorney's recent disciplinary history and permits the court to determine, in light of that history, whether sanctions are appropriate to protect the public and to maintain confidence in the bar. By requiring a presentment when a respondent has been disciplined three or more times within the preceding five years—even for misconduct that might not otherwise warrant such a referral—§ 2-47 (d) (1) enables the court to evaluate the attorney's recent conduct in its cumulative context.

Because the rules make clear that a Practice Book § 2-47 (d) (1) presentment is not intended to be a de novo proceeding in the Superior Court, and because due process requires judicial review of a finding of misconduct, we conclude that the judges of the Superior Court intended to provide an appellate mechanism for such presentments in the text and structure of § 2-47 (d). Subdivision (1) of § 2-47 (d) limits the trial court's role in a cumulative discipline presentment to determining the appropriate sanction in light of the respondent's current misconduct and prior disciplinary history; the merits of the misconduct finding itself are not before the court. The court's task in such a case is limited to

Office of Chief Disciplinary Counsel *v.* Vaccaro

weighing aggravating and mitigating factors and determining the appropriate sanction, if any. Subdivision (2) of § 2-47 (d) complements that limitation by directing that, if the respondent appeals from the reviewing committee's finding of misconduct, the court must *first* adjudicate and decide that appeal in accordance with the procedures of Practice Book § 2-38 (d) through (f) *before* proceeding to the presentment. By referring to an appeal from "the issuance of a finding of misconduct," § 2-47 (d) (2) presupposes that the appeal would be taken from the Statewide Grievance Committee's final decision. Furthermore, by providing that the appeal shall be decided "in accordance with the procedures set forth in subsections (d) through (f) of Section 2-38"; Practice Book § 2-47 (d) (2); the rule makes clear that the respondent can challenge the finding of misconduct on substantive or procedural grounds, including that the finding was "in violation of constitutional provisions . . . ." Practice Book § 2-38 (f). Read together, these provisions establish a sequential process: the reviewing committee determines whether there was misconduct and can order presentment pursuant to § 2-47 (d) if the respondent's disciplinary history warrants it; the respondent may obtain judicial review of the committee's determination through the appeal procedure set forth in § 2-38; and only after that appeal is resolved does the court consider what sanction, if any, is appropriate. These provisions do not preclude judicial review of the reviewing committee's determinations but instead regulate the manner in which those issues must be raised and resolved within this particular disciplinary framework.[14]

_____

[14] During oral argument, counsel for the respondent acknowledged that subdivisions (1) and (2) of Practice Book § 2-47 (d) function as "ordering provisions . . . ." That characterization accords with our reading of the rule, which recognizes these subdivisions as establishing the procedural sequence between an appeal and a presentment, rather than as limiting the availability of judicial review. The drafting history of Practice Book § 2-47 (d) reveals that what are now subdivisions (1) and (2) of subsection (d) were initially labeled as subsections (d) and (e). See Memorandum from

Office of Chief Disciplinary Counsel *v.* Vaccaro

To conclude otherwise would render Practice Book § 2-47 (d) largely meaningless. If an attorney could raise any and all issues at a § 2-47 (d) (1) presentment hearing, as the respondent posits, there would be no substantial need for an appellate mechanism distinct from a de novo presentment, and the "sole issue" clause of § 2-47 (d) (1) would serve no useful function. Such a reading also would disrupt the structure of the disciplinary scheme: because a presentment under § 2-47 (d) (1) occurs only when the reviewing committee is required to refer a matter to the court rather than when it imposes sanctions itself, limiting Practice Book § 2-38 appeals to decisions imposing sanctions would render meaningless the language in § 2-47 (d) (2) regarding an appeal from "the issuance of a finding of misconduct . . . ." We must presume that the drafters of the Practice Book provisions "had a purpose for every sentence, clause or phrase" contained therein. (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 242. We therefore adopt the construction that harmonizes the two rules and preserves the orderly operation of the disciplinary process: §§ 2-38 and 2-47 (d) operate together to provide the avenue for judicial review in cumulative discipline cases.

This reading accords with the Appellate Court's conclusion that "any appeal from a finding of misconduct or the denial of a motion to dismiss must be taken before the matter is presented to the Superior Court." *Office of Chief Disciplinary Counsel* v. *Vaccaro*, supra,

Carl E. Testo, director of legal services of the Connecticut Judicial Branch, to the Rules Committee of the Superior Court (January 22, 2002) p. 7–8. Their publication in the final version as coordinated subdivisions—(d) (1) and (d) (2)—reflects the Rules Committee's intent that they operate in tandem and reinforces that subsection (d) (2)'s requirement that the court resolve any appeal of the misconduct finding *before* reaching the presentment applies only when the presentment is initiated pursuant to subsection (d) (1).

Office of Chief Disciplinary Counsel *v.* Vaccaro

226 Conn. App. 88. Although the point could be expressed more clearly in the text of the rules, the pertinent provisions are best understood to provide that, once the time to appeal has expired, the reviewing committee's determinations—including its rejection of constitutional claims—become final and are no longer subject to review in a Practice Book § 2-47 (d) (1) presentment proceeding, where the sole issue is the appropriate sanction. See id., 88–89. Allowing a respondent to relitigate those issues at presentment would, as the Appellate Court observed, conflict with the principle that a party "may not use a different action as a substitute for [an] appeal to achieve a de novo determination of a matter [on] which [he] failed to take a timely appeal" and undermine the proper sequencing of the disciplinary process. (Internal quotation marks omitted.) Id., 87; see also *Peck* v. *Statewide Grievance Committee*, 198 Conn. App. 233, 247–48, 232 A.3d 1279 (2020) ("[a] collateral attack on a judgment is a procedurally impermissible substitute for an appeal" (internal quotation marks omitted)).

In sum, the manner in which Practice Book §§ 2-38 and 2-47 are drafted is not a model of clarity, but, when read together, we agree with the Appellate Court that, in a § 2-47 (d) (1) presentment, a respondent who wishes to challenge a reviewing committee's final decision finding misconduct or any subsidiary ruling made in connection with the finding of misconduct must do so through an appeal authorized by § 2-38. If appealed, § 2-47 (d) (2) requires the Superior Court to adjudicate that appeal before turning to the question of discipline. Once the § 2-38 appeal period lapses without action, the committee's decision is final, including its interlocutory rulings, and the Superior Court's authority at presentment is confined, under § 2-47 (d) (1), to determining "the appropriate [disciplinary] action to take," including whether dismissal is warranted based on mitigating cir-

Office of Chief Disciplinary Counsel *v.* Vaccaro

cumstances. This construction both preserves the judiciary's inherent authority over attorney discipline and ensures the orderly functioning of the disciplinary process. Finally, because this procedure provides an avenue for judicial review of the Statewide Grievance Committee's findings of misconduct, it satisfies the requirements of due process. See *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 243 n.6.

II

A

We acknowledge that the rules are not clear as to the precise procedure for appealing findings of misconduct when the reviewing committee has ordered presentment pursuant to Practice Book § 2-47 (d) (1). This lack of clarity takes on particular significance in attorney disciplinary proceedings, in which the stakes include the respondent's reputation and his license to practice law—a property right protected by the state and federal due process clauses. See, e.g., *Statewide Grievance Committee* v. *Shluger*, supra, 230 Conn. 675. We have long held that due process requires that an attorney has the right to be heard before this property right may be infringed. See, e.g., *Grievance Committee* v. *Sinn*, 128 Conn. 419, 422, 23 A.2d 516 (1941). Furthermore, in disciplinary proceedings, due process requires that the attorney be afforded "an appeal to court for a determination of whether he or she has been deprived of these rights in some substantial manner." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Botwick*, supra, 226 Conn. 308. Due process requires not merely that such procedures exist, but that they provide "the opportunity to be heard at a meaningful time and in a meaningful manner." (Internal quotation marks omitted.) *Mathews* v. *Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); see also *In re DeLeon J.*, 290 Conn. 371, 378, 963 A.2d 53 (2009).

353 Conn. 793 DECEMBER, 2025 819

Office of Chief Disciplinary Counsel *v.* Vaccaro

We agree with the respondent that the lack of explicit alignment between the procedures for appellate review set forth in Practice Book §§ 2-38 and 2-47 can cause confusion and uncertainty regarding how and when a respondent must appeal from a reviewing committee's final decision finding misconduct when the committee directs presentment under § 2-47 (d) (1). We cannot rule out the possibility that the lack of clarity in the rules may have led the respondent to forgo a timely appeal under § 2-38 (a) and thereby inadvertently to forfeit his opportunity for judicial review of his constitutional claim.[15]

Accordingly, we conclude that fundamental fairness requires limited relief in this case. The language used in Practice Book § 2-38 (a), together with its lack of clear alignment with the provisions of Practice Book § 2-47 (d), may have led the respondent to believe that he did not need to appeal from the reviewing committee's decision and, consequently, its denial of his motion to dismiss for prejudicial delay. In light of that conclusion, and because the respondent's claim implicates his fundamental due process rights as to a protected property interest, the case must be remanded to the trial court to permit the respondent to litigate the merits of his constitutional claim as if he had filed a timely appeal pursuant to §§ 2-38 and 2-47.[16]

---

[15] The Appellate Court appeared to give some weight to the fact that the respondent's counsel had prepared and mailed—but never filed—an appeal from the reviewing committee's decision, noting counsel's affidavit explaining the miscommunication that prevented the filing. See *Office of Chief Disciplinary Counsel* v. *Vaccaro*, supra, 226 Conn. App. 86–87 n.7. Although these actions reflect that the respondent understood that he could file an appeal at that time, the relevant inquiry here is whether the governing Practice Book provisions put him on notice that failing to do so at that time would result in the forfeiture of his ability to do so at the presentment hearing.

[16] On remand, the trial court's review of the respondent's due process claim shall proceed in accordance with Practice Book §§ 2-38 and 2-47 (d). Section 2-47 (d) (2) directs that the Superior Court decide such a claim in accordance with the procedures set forth in subsections (d) through (f) of § 2-38. To the extent the respondent is claiming that he is entitled to present

Office of Chief Disciplinary Counsel *v.* Vaccaro

B

To be clear, going forward, an attorney subject to a Practice Book § 2-47 (d) (1) presentment who wishes to challenge the underlying finding of misconduct, or any subsidiary ruling made in connection therewith, only may do so by taking a timely appeal pursuant to Practice Book § 2-38 (a). Failure to pursue such an appeal will preclude the attorney from challenging the finding of misconduct or any subsidiary ruling at the presentment hearing, which, pursuant to § 2-47 (d) (1), will be limited solely to the question of what action the court should take in light of the findings of misconduct.

Although we have resolved the lack of clarity and the procedural gap that exists between Practice Book

additional evidence on appeal in support of his due process claim, the rules, with one exception, provide otherwise. Pursuant to § 2-38 (d), "[t]he appeal shall be conducted by the court without a jury and shall be confined to the record. If alleged irregularities in procedure before the Statewide Grievance Committee or reviewing committee are not shown in the record, proof limited thereto may be taken in the court. The court, upon request, shall hear oral argument." During the argument provided for by the rule, the respondent can argue that the reviewing committee erred in concluding that he failed to present evidence of prejudice resulting from delay. The court would then make its own determination, without deference to that of the reviewing committee, whether the evidence in the record establishes prejudice and a violation of the respondent's due process rights. See Practice Book § 2-38 (f) ("Upon appeal, the court shall not substitute its judgment for that of the Statewide Grievance Committee or reviewing committee as to the weight of the evidence on questions of fact. The court shall affirm the decision of the committee unless the court finds that substantial rights of the respondent have been prejudiced because the committee's findings, inferences, conclusions, or decisions are . . . in violation of constitutional provisions . . . . If the court finds such prejudice, it shall sustain the appeal and, if appropriate, rescind the action of the Statewide Grievance Committee or take such other action as may be necessary."); see also *Somers* v. *Statewide Grievance Committee*, 245 Conn. 277, 290, 715 A.2d 712 (1998) ("[I]n reviewing a decision of the [S]tatewide [G]rievance [C]ommittee . . . the trial court . . . [does not take] on the function of a fact finder. Rather, [its] role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct." (Internal quotation marks omitted.)).

Office of Chief Disciplinary Counsel *v.* Vaccaro

§§ 2-38 and 2-47, those issues still exist in the language of the rules. We strongly encourage the Rules Committee of the Superior Court to review those rules in light of this decision and to clarify the appellate procedure when the reviewing committee directs a presentment pursuant to § 2-47 (d) (1).

III

The respondent next contends that the Appellate Court's interpretation of Practice Book § 2-47 (d) (1) improperly curtailed the trial court's inherent authority in disciplinary matters. The respondent argues that the Appellate Court's reading of "sole issue" in § 2-47 (d) (1) conflicts with § 2-47 (a), which authorizes the court to "render a judgment dismissing the complaint" after a hearing at which the respondent has "the right to be heard in his or her own defense . . . ." In the respondent's view, § 2-47 (a) preserves the presentment court's inherent authority to consider constitutional claims and to dismiss the proceedings altogether when constitutional defects infect the underlying process.

This claim is resolved by our analysis in part I of this opinion. We agree that the "Superior Court possesses inherent authority to regulate attorney conduct and to discipline the members of the bar." (Internal quotation marks omitted.) *Massameno* v. *Statewide Grievance Committee*, supra, 234 Conn. 553. That authority, however, operates in tandem with, and not in disregard of, the procedures codified in the Practice Book. See id., 554 (noting that Superior Court, in exercising its inherent disciplinary authority, "has adopted the Code of Professional Responsibility" and "a comprehensive disciplinary scheme," and that these rules operate within broader framework of judiciary's authority over attorneys).

As we concluded in part I of this opinion, constitutional challenges to the grievance process in a matter

Office of Chief Disciplinary Counsel *v.* Vaccaro

that results in a Practice Book § 2-47 (d) (1) presentment may be raised before the Superior Court but must be pursued through an appeal under Practice Book § 2-38 (a) before the presentment proceeds. Under § 2-47 (d) (2), a respondent who seeks to challenge the fairness or constitutionality of the disciplinary process must do so by appealing from the reviewing committee's finding of misconduct. Once that opportunity for appeal has lapsed, § 2-47 (d) (1) confines the court's role to determining "the appropriate action to take" in light of the respondent's current misconduct and prior discipline. Significantly, that determination may include complete dismissal when the court concludes, after weighing aggravating and mitigating factors, that no discipline is warranted.[17] The rules of practice preserve

[17] In 2006, Practice Book § 2-47 (d) (1) was amended. The amendment history reflects that, "in the fourth sentence of subsection (d) (1), 'action' was substituted for 'discipline' and 'take' was substituted for 'be imposed.' Prior to 2006, the fifth sentence of subsection (d) (1) provided: 'Such discipline may include reprimand, suspension for a period of time, disbarment or such other discipline as the court deems appropriate.' " Practice Book (2006) § 2-47, history. The 2006 amendment changed this language to provide: "Such action shall be in the form of a judgment *dismissing the complaint or imposing discipline* as follows: reprimand, suspension for a period of time, disbarment or such other discipline as the court deems appropriate." (Emphasis added.) Practice Book (2006) § 2-47 (d) (1). The history further notes that, "[i]n 2006, in the sixth sentence of subsection (d) (1), the words 'suspension or disbarment' were deleted before the phrase 'may include conditions.' " Practice Book (2006) § 2-47, history.

The express purpose of these changes, as explained in the commentary, was to "[make] it clear that the court may dismiss a presentment complaint brought pursuant to subsection (d) (1)." Practice Book (2006) § 2-47, commentary. Indeed, the proposal to amend the fifth sentence of § 2-47 (d) (1) explained that the change "would specifically permit the Superior [Court] to dismiss a presentment brought" under subsection (d) (1). Memorandum from Daniel B. Horwitch, statewide bar counsel, to Carl E. Testo, director of legal services of the Connecticut Judicial Branch (September 8, 2004) p. 1 (Memorandum from Horwitch to Testo). The proposal further noted that, "in matters in which the [c]ommittee specifically concludes that a presentment is warranted because its own authority to reprimand the respondent is insufficient given the seriousness of the misconduct, the [c]ourt has the authority to dismiss the complaint. [See] Practice Book [2004] § 2-47 (a). The [c]ommittee is of the opinion that the rule should be clear that in

353 Conn. 793 DECEMBER, 2025 823
Office of Chief Disciplinary Counsel *v.* Vaccaro

the Superior Court's inherent authority in disciplinary matters while establishing the procedural sequence in which that authority must be exercised. Thus, the respondent retains the full measure of the relief he seeks—judicial review and potential dismissal—so long as he follows the procedure that the rules prescribe.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's judgment and to remand the case to that court for further proceedings consistent with this opinion.

In this opinion the other justices concurred.

––––––––––––––––

matters brought to the court as a result of lesser, albeit repeated instances of misconduct, the [c]ourt should be equally free to dismiss the matter." Memorandum from Horwitch to Testo, supra, p. 1.

To the extent the respondent reads the court's authority to "render a judgment dismissing the complaint" under Practice Book § 2-47 (a) as permitting the court to hear unappealed due process claims de novo, the amendment history and commentary confirm otherwise: dismissal in a § 2-47 (d) (1) presentment is part of the court's determination of "the appropriate action to take . . . ." It does not alter or expand the court's scope of review in such a presentment.